## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ERIKA TAFOYA, as next of kin to
MALIYAH JONES, Deceased,

       Plaintiff,

vs.                                         No. CIV 19-0675 JB/SCY

STATE OF NEW MEXICO; NEW
MEXICO DEPARTMENT OF HUMAN
SERVICES; CHILDREN, YOUTH &
FAMILIES DEPARTMENT; TAYLOR
TOTS DAYCARE; SANDI TAYLOR,
Individually, and MARY TAYLOR,
Individually,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the State of New Mexico, Children Youth &

Families Department's Motion to Dismiss Plaintiff's First Amended Complaint, filed July 17,

2020 (Doc. 21)("MTD").  The Court held a hearing on October 6, 2020.  See Clerks' Minutes, at

1, filed October 6, 2020 (Doc. 48).  Defendants State of New Mexico and Children Youth &

Families Department (the "State Defendants") request that the Court dismiss Plaintiff Erika

Tafoya's claims against them under rule 12(b)(6) of the Federal Rules of Procedure.  See MTD

at 1.  The primary issues are: (i) whether the State Defendants are immune from Tafoya's claims

under the Eleventh Amendment to the Constitution of the United States of America; (ii) whether

the New Mexico Tort Claims Act ("NMTCA"), N.M.S.A. §§ 41-4-1 to -27, waives the State

Defendants' Eleventh Amendment immunity; and (iii) whether the Court should grant Tafoya's

request to amend her First Amended Complaint for Wrongful Death, Personal Injury, Loss of

Parental Consortium and Other Damages Under the New Mexico Wrongful Death Act and New

Mexico Tort Claims Act and New Mexico Statutory and Common Law Pro Hac Vice, filed August 9, 2020 (Doc. 7)("First Amended Complaint").  The Court concludes that: (i) the State Defendants have Eleventh Amendment immunity and that Tafoya cannot sue the State Defendants under 42 U.S.C. § 1983, because the State Defendants are not persons for purposes of § 1983; (ii) there is no waiver of Eleventh Amendment immunity under the NMTCA, because the Defendants Sandi Taylor and Mary Taylor (collectively the "Taylors") are not public employees and there is no waiver of immunity for negligent supervision; and (iii) it would be futile to amend the First Amended Complaint, because the Court's Eleventh Amendment analysis would not change. Accordingly, the Court grants the MTD, and dismisses Tafoya's claims against the State Defendants.

## FACTUAL BACKGROUND

The Court takes its facts from the First Amended Complaint.  The Court accepts the factual allegations as true for the purposes of the MTD.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Sanders v. Mountain Am. Fed. Credit Union, 689 F.3d 1138, 1141 (10th Cir. 2012)(concluding that a court accepts "all facts pleaded by the non-moving party as true and grants all reasonable inferences from the pleadings in that party's favor").  The Court does not, however, accept as true the legal conclusions within the First Amended Complaint.  See Ashcroft v. Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

This case arises out of the death of child M.J, who passed away on July 25, 2017.  See First Amended Complaint ¶¶ 5-8, at 3.  Tafoya is M.J.'s mother.  See First Amended Complaint ¶ 1, at 2.  The Taylors operate Defendant Taylor Tots Daycare, which is located in Portales, New Mexico.  See First Amended Complaint ¶¶ 6, 20 at 3, 6.  The Taylors are both New Mexico

residents.  See First Amended Complaint ¶¶ 21-22 at 6.

Defendant Children, Youth, and Families Department ("CYFD") is a State of New Mexico agency.  First Amended Complaint ¶ 19, at 5.  See N.M.S.A. §§ 9-2a-1 to -24.  The State of New Mexico has charged CYFD with the "'administ[ration] of all laws and the exercise of all functions formerly administered and exercised by the youth authority, as well as administering certain functions related to children, youth and families that were formerly administered by other departments or agencies of the state.'"  First Amended Complaint ¶ 19, at 5 (quoting N.M.S.A. § 9-2a-2(A)).  The State of New Mexico has charged CYFD with developing "'state policies and plans for services to children, youth, and families,'" and "'advoca[ting] for services for children, youth and families within the State of New Mexico.'"  First Amended Complaint ¶ 19, at 5-6 (quoting N.M.S.A. §§ 9-2a-2(B), (C)).

Before July 25, 2017, CYFD informed the Taylors that they were not permitted to transport children by car.  See First Amended Complaint ¶ 9, at 3.  See also id. ¶ 11, at 10.  CYFD did not monitor whether the Taylors transported children by car.  See First Amended Complaint ¶ 9, at 3.  CYFD did not monitor whether the Taylors obtained necessary permission slips from parents for field trips.  See First Amended Complaint ¶ 10, at 3.  On one occasion, CYFD investigated a complaint and found that nine out of nine children did not have the required permission slips to attend a field trip.  See First Amended Complaint ¶ 10, at 3-4.  CYFD "leaves it up to" daycare centers to inform CYFD if the daycare has made "any changes in vehicles or if new vehicles are purchased."  First Amended Complaint ¶ 11, at 4.  Before July 25, 2017, CYFD did not inform parents that Taylor Tots Daycare is not allowed to transport children by vehicle.  See First Amended Complaint ¶ 12, at 4.

On July 25, 2017, M.J. was attending daycare at Taylor Tots Daycare.  See First Amended

Complaint ¶ 6, at 3.  That day, the Taylors drove twelve minor children, including M.J., to a park.  See First Amended Complaint ¶ 7, at 3.  Later, the Taylors drove back to Taylor Tots Daycare, and, upon returning to Taylor Tots Daycare, the Taylors did not do a headcount of the children.  See First Amended Complaint ¶¶ 6-7, at 3.   At approximately 12:45 p.m., the Taylors left M.J. in a vehicle.   See First Amended Complaint ¶ 6, at 3.   The vehicle was "scorching hot."   First Amended Complaint ¶ 6, at 3.

At approximately 3:25 p.m., Sandi Taylor went back to the vehicle to retrieve paperwork.  See First Amended Complaint ¶ 8, at 3.  The Taylors then discovered M.J. in the vehicle.  See First Amended Complaint ¶ 8, at 3.  M.J. was taken to a hospital, but she was pronounced dead on arrival at the hospital.  See First Amended Complaint ¶ 8, at 3.

## PROCEDURAL HISTORY

On July 22, 2020, Tafoya, as Wrongful Death Personal Representative and as next of kin to M.J., decedent, filed the Complaint for Wrongful Death, Personal Injury, Loss of Parental Consortium and Other Damages Under the New Mexico Wrongful Death Act and New Mexico Tort Claims Act and New Mexico Statutory and Common Law Pro Hac Vice, filed July 22, 2020 (Doc. 1)("Complaint").  On August 9, 2020, Tafoya filed the First Amended Complaint, alleging four causes of action.  See First Amended Complaint at ¶¶ 23-47, 1-11.  Tafoya alleges (i) violation of substantive due process for the Defendants' failure to keep children reasonably safe from harm; (ii) negligence; (iii) negligent hiring and retention; and (iv) loss of parental consortium.  See First Amended Complaint ¶¶ 23-47, at 6-11

### 1.    The MTD.

The State Defendants filed their Motion to Dismiss on July 16, 2020.  See MTD at 1.  The State Defendants argue that they should be dismissed under rule 12(b)(6) of the Federal Rules of

Procedure, because the causes the of actions against them fail as a matter of law.  See MTD at 1-2.  The State Defendants argue that (i) the CYFD is an "arm of the state" and it is, therefore, immune from federal law claims under the Eleventh Amendment; (ii) CYFD is not a "person" under 42 U.S.C. § 1983; and (iii) CYFD is immune from Plaintiff's state law claims under the NMTCA, because no waiver of immunity exists.  See MTD at 1-2.

The State Defendants contend that under Bell Atl. Corp. v. Twombly, a "complaint must have enough factual allegations, taken as true, 'to state a claim to relief that is plausible on its face.'"  MTD at 3 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  The State Defendants maintain that "'mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action" will not suffice; a plaintiff must offer specific factual allegations to support each claim.'"  MTD at 3 (quoting Kansas Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555)).

The State Defendants argue that Tafoya's federal law claims fail under the Eleventh Amendment.  See MTD at 4.  The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The State Defendants maintain that the Eleventh Amendment makes a state immune from suit from its own citizens or citizens of another state without the state's consent.  See MTD at 4 (citing Hunt v. Cent. Consol. Sch. Dist., 951 F. Supp. 2d 1136, 1192 (D.N.M. 2013)(Browning, J.); Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990)).  The State Defendants contend that state agencies and state officials are also immune as "'an arm of the state.'"  MTD at 4 (quoting Hunt v. Cent. Consol. Sch, 951 F. Supp. 2d at 1192).  The State Defendants argue that sovereign immunity prohibits suits for damages

against a state, except where the state choses to waive that immunity.  See MTD at 4 (citing

Coleman v. Court of Appeals of Maryland, 132 S. Ct. 1327, 1333 (2012)).

The State Defendants contend that, because New Mexico has not waived its sovereign

immunity, Tafoya's federal law claims against the CYFD, as an arm of the state, should be

dismissed.  See MTD at 5 (citing Arguello v. Arguello, 2012 WL 13080095, at *3 (D.N.M. July

13, 2012)(Parker, J.)("The State [of New Mexico] has not consented to federal civil rights suits.");

Ysais v. Richardson, 2008 WL 4861697, at *1 (D.N.M. July 9, 2008)(Browning, J.)).  The State

Defendants also contend that Tafoya's § 1983 claim fails, because the CYFD are not "'persons'

for purposes of liability under § 1983."  See MTD at 5 (quoting Arguello v. Arguello, 2012 WL

13080095, at *3).

Next, the State Defendants argue that CYFD is immune from Tafoya's state law claims of

negligence; negligent hiring, training, supervision, and retention; and loss of parental consortium

under the NMTCA.  See MTD at 5.  The State Defendants contend that, under the NMTCA,

government entities are "'only . . . liable within the limitations of the [NMTCA] and in accordance

with the principles established in that act.'"  MTD at 5 (quoting N.M.S.A. 1978, § 41-4-2).  Further,

"under the NMTCA, '[a] governmental entity and any public employee while acting within the

scope of duty are granted immunity from liability for any tort except as waived by . . . Sections

41-4-5 through 41-4-12 N.M.S.A. 1978.'"  MTD at 5 (quoting N.M.S.A. 1978, § 41-4-4(A)).  The

State Defendants argue that Tafoya has not identified any applicable waiver of Eleventh

Amendment immunity, and that her allegation of negligent supervision fails under the NMTCA.

See MTD at 6 (citing Upton v. Clovis Mun. Sch. Dist., 2006-NMSC-040, ¶ 16, 141 P.3d 1259

("[A] complaint alleging nothing more than negligent supervision is not actionable, because the

[NM]TCA does not specify a tort waiver for negligent supervision.")).  The State Defendants argue

that Tafoya's loss of consortium claim fails because it is derived from the negligent supervision claim.  See MTD at 6-7.  Last, the State Defendants contend that Tafoya is not entitled to recover any punitive damages, because the NMTCA does not prohibit recovery of punitive damages against New Mexico.  See MTD at 7 (citing N.M.S.A. 1978, § 41-4-19(D)).

    **2.**     **The Response to MTD.**

Tafoya responds.  See Plaintiff's Response to Defendant State of New Mexico, Children Youth & Families Department's Motion to Dismiss Plaintiff's First Amended Complaint, filed August 24, 2020 (Doc. 29)("Response").  Tafoya argues that, under rule 12(b)(6), the Court must "'accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the non-moving party.'"  Response at 3 (quoting Nelson v. State Farm Mut. Auto Ins. Co., 419 F.3d 1117, 1119 (10th Cir. 2005)).  In her response, Tafoya raises three arguments: (i) she needs additional time to collect facts; (ii) the State Defendants are not immune under the qualified immunity tests; and (iii) N.M.S.A. § 41-4-5 waives immunity here.  See Response at 3-7.

First, Tafoya argues that the parties have not conducted discovery; therefore, Tafoya "has been unable to obtain relevant information about Defendant CYFD as well as Defendant Taylor Tots Daycare."  Response at 3-4.  Tafoya argues that the MTD should be denied in order to allow Tafoya to gather more information "so that justice may be sought for Plaintiff."  Response at 4.  Second, Tafoya argues that government officials are not entitled to qualified immunity if they violate a clearly established constitutional right.  See Response 4-5 (citing Considine v. Board of County Comm'rs, 910 F.2d 695, 702 (10th Cir. 1990)).  Tafoya contends that the State Defendants violated Tafoya's Fourteenth Amendment substantive due process rights and that the "undisputed facts of this case show that Defendant's actions and inactions violated clearly established laws."

Response at 5.  Tafoya avers  that the State Defendants had a duty

> to ensure that the lives of young children are placed in those who can appropriately take care of children and in the alternative take reasonable actions in order to prevent harm to children. Had [the] Defendant[s] followed proper protocol, Decedent would never have been left to die in a scorching hot vehicle during the summer in New Mexico.

Response at 6.

Third, Tafoya argues that the State Defendants are not immune under the NMTCA for "damages resulting from bodily injury, wrongful death, or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any motor vehicle."  Response at 6 (citing N.M.S.A. § 41-4-5.).  Tafoya argues that the State Defendants used a vehicle "[o]n the day of the Decedent's death . . . [and the] Defendant[s] failed to take reasonable actions in preventing Defendant Taylor Tots from operating a motor vehicle."  Response at 7.

### 3.    The Reply.

The State Defendants reply.  See State of New Mexico, Children Youth & Families Department's Reply in Support of Motion to Dismiss Plaintiff's First Amended Complaint, filed September 22, 2020 (Doc. 36)("Reply").  The State Defendants argue that Tafoya "confuses [the] Eleventh Amendment immunity argument with qualified immunity under 42 U.S.C. Section 1983. However, CYFD is entitled to absolute immunity as an 'arm of the state' and cannot be sued in federal court unless the State of New Mexico has waived such immunity, which it has not."  Reply at 1-2 (no citation for quotation).  The State Defendants also argue that under § 1983, the qualified immunity doctrine does not apply, because the CYFD is not a "person" for the purposes of § 1983. See Reply at 2. Next, the State Defendants argue that there is no waiver of immunity under the NMTCA because N.M.S.A. § 41-4-5 only applies to "public employee[s]," which Defendants

Sandi Taylor and Mary Taylor are not.  Reply at 2.  Last, the State Defendants argue that Tafoya's request for additional time should be denied, because such a request is inapplicable for rule 12(b)(6) proceedings and Tafoya does not explain what facts would be uncovered to defeat the State Defendants' immunity.  See Reply at 2.

    **4.**       **<u>The Motion to Amend the Complaint, the Second Amended Complaint, and Motion to Continue Hearing.</u>**

On October 5, 2020, Tafoya filed an Opposed Motion for Leave to Amend Plaintiff's Complaint, filed October 5, 2020 (Doc.  43)("Motion to Amend").  Tafoya stated that she had "recently obtain[ed] Plaintiff's Expert Report, new facts have been discovered.  Accordingly, additional time is needed to adequately amend Plaintiff's Complaint."  Motion to Amend at 1.  Tafoya argued, that under rule 15, the Court should grant the Motion to Amend.

The same day, Tafoya filed: (i) her Second Amended Complaint for Wrongful Death, Personal Injury, Loss of Parental Consortium and Other Damages Under the New Mexico Wrongful Death Act and New Mexico Tort Claims Act and New Mexico Statutory and Common Law Pro Hac Vice, filed October 5, 2020 (Doc. 44)("Second Amended Complaint"); and (ii) an Opposed Motion to Delay Motion to Dismiss Hearing, filed October 5, 2020 (Doc. 45).  Tafoya noted that the she had "recently obtain[ed] Plaintiff's Expert Report, new facts have been discovered," and argued that not enough time had passed in order to conduct discovery.  See Opposed Motion to Delay Motion to Dismiss Hearing at 2.  Tafoya asked the Court to delay the hearing set for the next day because she had "recently discovered new facts from its Expert and humbly requests additional time to Amend Plaintiff's Complaint."  Opposed Motion to Delay Motion to Dismiss Hearing at 2.

5.     __The Hearing__.

The Court held a hearing on October 6, 2020.  See Clerk's Minutes at 1, filed October 6,

2020 (Doc. 48).  Tafoya stated that she had filed for leave to file second amended complaint and

had filed a motion to delay the current hearing because she had obtained "an expert that gave us

some additional facts that we wanted to incorporate in our second amended complaint."  Transcript

of Hearing at 4:18-19 (taken October 6, 2020)(Pradia)("Oct. 6 Tr.").[1]  The State Defendants stated

that Tafoya had actually filed a second amended complaint and that they "assume [the second

amended complaint] was in error and what [Tafoya] intended to file was the motion for leave to

file the second amended complaint," and that "the second amended complaint has been filed

without consent of the defendants and without leave of Court and we would think that would need

to be struck depending upon how the Court rules."  Oct. 6 Tr. at 5:10-12 (Shanor).  The State

Defendants indicated that Tafoya had not attached an expert report to the filings or a proposed

draft of the second amended complaint.  See Oct. 6 Tr. at 5:24-6:1 (Shanor).  The State Defendants

explained that they oppose the motion to amend the complaint, because it would futile to amend,

as "it doesn't change the factual basis" on which the motion to dismiss is premised.  Tr. at 6:4-7

(Shanor).  The State Defendants also noted that the Complaint has been pending for fourteen

months and that the motion to dismiss has been fully briefed.  See Oct. 6 Tr. at 6:8-15 (Shanor).

In response, Tafoya contended that she "believe[s] that the new facts will change the whole

outcome of the case we believe and the whole outcome of the motion that's been filed by the State

of New Mexico."  Tr 7:15-18 (Pradia).  The Court stated that it was "fully prepared to hear [the]

---

[1]The Court's citations to the transcripts of each hearing in this Memorandum Opinion and
Order refer to the court reporter's original, unedited versions.  Any final transcripts may contain
slightly different page and/or line numbers.

motion [to dismiss]," and noted that it "seriously doubt[ed] anything in an expert report is going to change the legal issues here.  I just don't see how you can sue the State of New Mexico or CYFD under the Eleventh Amendment or under § 1983." Oct. 6 Tr. at 8:2-9 (Court).  The Court stated that it was "inclined to deny the motion to continue.  It seems to me you probably need to withdraw the [second amended] complaint itself if it was filed and . . . then we need to set a hearing on your second amended complaint." Oct. 6 Tr. at 8:17-23 (Court).

Turning to the Motion, the State Defendants argue that "the 12(b)(6) tests the legal sufficiency of the complaint.  It does not go to matters outside of the pleadings but just tests the necessarily sufficiency of the complaint." Oct. 6 Tr. at 9:9-12 (Shanor).  The State Defendants explained that moving to dismiss under the Eleventh Amendment, because the

> New Mexico Children Youth and Families Department is an arm of the state.  It's been recognized by this Court in other cases, and by a plethora of other courts.  As an arm of the state, the Eleventh Amendment bars suit for damages in federal court unless there has been some waiver.  There has not been any allegation of a waiver. . . .  There has not been any allegation of any consent, and so we think the law is fairly clear on this, and that absent a consent or a waiver under the Eleventh Amendment, that bars suit while 42 U.S.C. § 1983 perhaps grants the plaintiffs a cause of action it does not confer upon them a forum in federal court because of the Eleventh Amendment.

Oct. 6 Tr. at 9:18-10:9 (Shanor).  The State Defendants contended that Tafoya does not argue that there has been a waiver or consent to be sued, but instead requested additional discovery, which is inappropriate under 12(b)(6).  See Oct. 6 Tr. at 10:9-17 (Shanor).  The State Defendants argued that even under rule 56(D) of the Federal Rules of Civil Procedure, if Tafoya needs additional discovery, Tafoya

> must file an affidavit, identify the probable facts not available, their relevance and the what steps they've taken to obtain those facts and explain why the facts preclude the dispositive months of they've not done that.  So even if the Court were to construe to request for additional discovery under [rule] 56(D), they've not met their burden.

Oct. 6 Tr. at 10:20-11:1 (Shanor).  Next, the State Defendants argued that under the NMTCA, the

state law claims should be dismissed.  See Oct. 6 Tr. at 11:1-5 (Shanor).  The State Defendants

maintained that the NMTCA "balances the interests of the sovereign, provides a cause of action,

but only in those areas where there is an enumerated waiver of immunity.  And we've contended

that immunity has not been waived under the  New Mexico Tort Claims Act."  Oct. 6 Tr. at 11:5-

10 (Shanor).  The State Defendants argued that, although Tafoya cites N.M.S.A. § 41-4-5 as a

waiver of Eleventh Amendment immunity that Section governs the operation of a motor vehicle,

and under N.M.S.A. § 41-4-5,

> immunity is [waived] where the damage is caused by negligence of public
> employees while acting in the course and scope of their duties in operation of a
> motor vehicle.  They've not alleged anywhere in there that Taylor Tots Taylor or
> Taylor Tots were public employees and if you look at the definition section under
> [§] 41-4-3(F), which numerates . . . who is defined as a public employee, clearly
> the Taylors do not fall within that.  But again 12(b)(6) goes to the legal sufficiency
> [of the] pleadings.  There is not any contention that they're public employees, there
> [are] not any facts which support a conclusion that there is a waiver under that
> section other than just the bare assertion.  So we would ask the Court to dismiss all
> claims against the state.

Oct. 6 Tr. at 11:17-12:8 (Shanor).

In response, Tafoya argued that "the State of New Mexico was attached at the hip with

the Taylor Tots organization because they failed to regulate Taylor Tots by not giving notice to

the parents that Taylor Tots was prohibited from transporting kids.  And so we believe that's

kind of like a nondelegable duty." Oct. 6 Tr. at 13:2-25 (Pradia).  Tafoya argued that the

> State of New Mexico, on their website, is supposed to put up violations of different
> day cares so they can give parents notice.  The State of New Mexico did not do that,
> and the website and the notice provision that is . . . give[n to the] parents, is . . .
> insufficient, and so we would submit that the State of New Mexico made a
> significant role in causing the death of [M.J.] by not regulating Taylor Tots.  There
> was no way that the parents could know or any parent could know that Taylor Tots
> were transporting these kids in violation of the New Mexico State statutes.  New
> Mexico state employees of CYFD testified during the criminal trial that they did

> not go out and inspect the facility Taylor Tots, and so we believe that the State of
> New Mexico failed [M.J. and] failed [E.J.] and the State of New Mexico is the
> reason why [M.J.] is dead right now and the other child has a brain injury because
> of the State of New Mexico.  And . . . however unorthodox my argument is, . . . in
> the context of a family law, the State says that the best interests of the child should
> suffice.  And so we believe that the State of New Mexico didn't have the best
> interests of any of the children at the Taylor Tots Daycare, so we believe that the
> State of New Mexico basically waived their immunity under the Eleventh
> Amendment because they failed to supervisor, they failed to regulate their
> employees, and they failed to promulgate the proper policies and procedures to
> notice of parents that Taylor Tots were transporting kids in violation of the CYFD
> regulations and so we believe that the State of New Mexico.

Oct. 6 Tr. at 14:6-15:13 (Pradia).    After the Court asked Tafoya to focus on the Eleventh

Amendment argument, Tafoya argued that under the Eleventh Amendment, the State Defendants

"have waived their immunity from suit by not . . . promulgating the rules and regulations of the

day cares in the State of New Mexico." Oct. 6 Tr. at 16:2-13 (Court, Pradia).   Tafoya argued the

New Mexico allowed the daycare to operate without insurance, and therefore "the State of New

Mexico is not protecting children and we believe that they should be held responsible for" the

death and injuries to the two children.  Oct. 6 Tr. at 16:20-25 (Pradia).

Next, Tafoya argued that under the NMTCA, "waiver applies, . . . because of the failure of

the employees of CYFD to administer the proper rules and regulation to stop Taylor Tots from

transporting kids and so you're talking about the failure to supervise we believe that it knocks out

tort claims exception." Oct. 6 Tr. at 17:3-8 (Pradia).   The Court stated the State Defendants'

argument is that even though Tafoya is invoking the "automobile exemption," "Sandi and Mary

Taylor and Taylor Tots were not state employees.  So a waiver of state immunity isn't going to

apply to people that aren't employees." Oct. 6 Tr. at 17:15-19 (Court).    Tafoya responded,

explaining that she understood the State Defendants' argument

> that Mary and Sandi Taylor are private individuals.  But . . . because they were
> operating a motor vehicle and the State of New Mexico did not put the proper rules

> in place so [that] they could not operate a motor vehicle [the State Defendants are liable] . . . .   My argument is that the State of New Mexico and Sandi and Mary Taylor of Taylor Tots are joined at the hip, and that both of them are responsible for the death of [M.J.] . . . by [allowing] them operating the motor vehicle . . . .

Oct. 6 Tr. at 17:21-18:9 (Pradia).

In reply, the State Defendants argued that under 12(b)(6), Tafoya's claims are insufficient.

See Oct. 6 Tr. at 19:1-7 (Shanor).  The State Defendants argued that Tafoya did not say anything

about

> waiver under the Eleventh Amendment other than to say that because they don't believe New Mexico, State of New Mexico had the children's best interests at heart that somehow his tantamount to a waiver.  That's not so under the Eleventh Amendment.  And so we think that this should be dismissed under the Eleventh Amendment.  With regard to the New Mexico Tort Claims Act, we've asserted immunity.  It [is the] plaintiff's burden to prove that.

Oct. 6 Tr. at 19:1-7 (Shanor).  Tafoya responded:

> Your Honor, this is a tragedy that occurred and we don't believe that the State of New Mexico should be able to wipe their hands and say that they didn't play a significant role in the death of [M.J.]. . . .  [T]he Court should take what's happened in this case and say to themselves why should we let the State of New Mexico get away scot-free when they contributed to the death of [M.J.] and it's time that the states all across the country understand that just because you're an arm of the Government doesn't give you the right to contribute to the death of children.

Oct. 6 Tr. at 20:9-24 (Pradia).  The State Defendants replied:

> Your Honor I'd only state this case is a tragedy and that's not lost on any of the attorneys or on the Court.  But whether plaintiffs can proceed in federal court is governed by, it doesn't change the measure of the losses does not change the 11th amendment that.  The significance of the loss does not change whether immunity has been waived under New Mexico Tort Claims Act.  And so while we acknowledge this is a tremendous loss, the plaintiffs have not met their burden and we would the ask the Court to dismiss

Oct. 6 Tr. at 22:15-25 (Shanor).

The Court stated that under the Eleventh Amendment, the State Defendants have to be

dismissed; however, with respect the NMTCA, the Court would have to give it a little more thought

because it was unfamiliar with that statute.  See Oct. 6 Tr. at 23:16-24 (Court).  The Court stated

that it did think that because Tafoya was not a state employee, the waiver provision under the

NMTCA likely did not apply.  See Oct. 6 Tr. at 23:24-24:5 (Court).  The Court explained that it

was

> going to take a little bit look at the New Mexico Tort Claims Act.  [It was] going to
> dismiss all the federal claims against the State of New Mexico. . . .  Does the
> Eleventh Amendment immunity . . . cover the New Mexico Tort Claims Act?  Is
> there a waiver of that?  [The Eleventh Amendment] is a barrier for bringing  claims
> in federal court.  The New Mexico Tort Claims Act I think . . . has a provision that
> says it doesn't waive the Eleventh Amendment for even New Mexico Tort Claims
> Act . . . .

Oct. 6 Tr. at 26:12-25 (Court).  Defendant Taylor Tots Daycare stated that the NMTCA does not

waive the Eleventh Amendment.  See Oct. 6 Tr. at 27:1-5 (Childress).  The Court stated: "[E]ven

if I were to find a waiver of immunity, it's not going to allow me to entertain the claims against

the state.  So . . . yes, I am granting the motion, because I don't think you can bring the case against

the state entities in federal court."  Oct. 6 Tr. at 27:17-22 (Court).

The Court also asked Tafoya to file a notice of withdrawal the second amended complaint

and that it would set a hearing on Tafoya's motion to amend the complaint.  See Oct. 6 Tr. at

24:12-20 (Court).  That same day, on October 6, 2020, Tafoya filed a Notice of Withdrawal of

Plaintiff's Second Amended Complaint, filed October 6, 2020 (Doc. 47).

### 6.    The Response to the Motion to Amend Complaint and the Withdrawal of the Motion to Amend the Complaint.

On October 19, 2020, Defendants, Taylor Tots Day Care, Sandi Taylor, and Mary Taylor

(collectively the "Taylor Defendants"), filed a Response to Plaintiff's Motion for Leave to Amend

Plaintiff's Complaint, filed October 19, 2020 (Doc. 49)("Response to Motion to Amend").  The

Taylor Defendants argue that the Motion to Amend should be denied because "Plaintiff's

amendment to the Complaint is futile as the Court lacks jurisdiction over Plaintiff's claims against the Taylor Defendants."  Response to Motion to Amend at 2.  The Taylor Defendants maintain that: (i) Tafoya has not asserted any federal claims against them; (ii) there is no diversity between the parties, because the parties are all from the same state; and (iii) the Court lacks supplemental jurisdiction over them.  <u>See</u> Response to Motion to Amend at 3-4.

The Court held a hearing on the Motion to Amend on November 6, 2020.  <u>See</u> Clerk's Minutes at 1, filed November 6, 2020 (Doc. 52).  Tafoya stated:

> We are going to get the case settled with the [Taylor Defendants]. . . . [W]e have decided to close the case out.  And so the amended complaint is moot at this point.  So we talked to the defendant yesterday and we thought that we still needed to come on just to let you know that this morning.  But we're going to close this matter out so there is no need to [have an] amended complaint hearing this morning.

Transcript of Hearing at 5:11-20 (taken November 6, 2020)(Pradia)("Nov. 6 Tr.").

The Court stated that it is working on an opinion and asked if the State Defendants still need the opinion.  <u>See</u> Nov. 6 Tr. at 6:11-15 (Court).  The State Defendants stated they still need the opinion.  <u>See</u> Nov. 6 Tr. at 6:16 (Shanor).  The Court then asked the Taylor Defendants if they are settling with Tafoya, and if so, is the Motion to Amend still an issue.  <u>See</u> Nov. 6 Tr. at 6:22-25 (Court). The Taylor Defendants stated that the proposed second amended complaint does not have any new allegations relevant to the Taylor Defendants, and "the only reason [they] filed a response is that if the court dismissed the state defendants we didn't think the court would have jurisdiction over the Taylor defendants, but yes, we are settling.  [Tafoya] did withdraw the second amended  complaint in document 47."  Nov. 6 Tr. at 7:1-9 (Childress).  The Court then asked Tafoya to file "a notice withdrawing the Plaintiff's opposed motion document number 43."  Nov. 6 Tr. at 7:22-23 (Court).   Both the State Defendants and the Taylor Defendants stated that would work for them.  <u>See</u> Nov. 6 Tr. at 7:24-8:3 (Court, Childress, Shanor).

## LAW REGARDING RULE 12(b)(6)

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). The complaint's sufficiency is a question of law, and, when considering a rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the nonmoving party, and draw all reasonable inferences in the plaintiff's favor. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)("[O]nly if a reasonable person could not draw . . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009)("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." (citing Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006))).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. at 555.

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if

assumed to be true, state a claim to relief that is plausible on its face.  See Bell Atl. Corp. v.
Twombly, 550 U.S. at 570; Mink v. Knox, 613 F.3d 995, 1000 (10th Cir. 2010).  "A claim has
facial plausibility when the pleaded factual content allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at
678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 556).  "Thus, the mere metaphysical possibility
that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient;
the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood
of mustering factual support for these claims."  Ridge at Red Hawk, LLC v. Schneider, 493 F.3d
1174, 1177 (10th Cir. 2007)(emphasis omitted).  The United States Court of Appeals for the Tenth
Circuit has stated:

> "[P]lausibility" in this context must refer to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath of conduct,
> much of it innocent, then the plaintiffs "have not nudged their claims across the line
> from conceivable to plausible."  The allegations must be enough that, if assumed to
> be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008)(citations omitted)(quoting Bell Atl.
Corp. v. Twombly, 550 U.S. at 570).  See Gallegos v. Bernalillo Cty. Board of Cty. Comm'rs, 278
F. Supp. 3d 1245, 1259 (D.N.M. 2017)(Browning, J.).

"When a party presents matters outside of the pleadings for consideration, as a general rule
'the court must either exclude the material or treat the motion as one for summary judgment.'"
Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1103 (10th Cir.
2017)(quoting Alexander v. Oklahoma, 382 F.3d 1206, 1214 (10th Cir. 2004)).  There are three
limited exceptions to this general principle: (i) documents that the complaint incorporates by
reference, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322; (ii) "documents
referred to in the complaint if the documents are central to the plaintiff's claim and the parties do

not dispute the documents' authenticity," Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002); and (iii) "matters of which a court may take judicial notice," Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322.  See Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d at 1103 (holding that the district court did not err by reviewing a seminar recording and a TV episode on a rule 12(b)(6) motion, which were "attached to or referenced in the amended complaint," central to the plaintiff's claim, and "undisputed as to their accuracy and authenticity"). "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."  Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).

In Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010), the defendants "supported their motion with numerous documents, and the district court cited portions of those motions in granting the [motion to dismiss]."  627 F.3d at 1186.  The Tenth Circuit held that "[s]uch reliance was improper" and that, even if "the district court did not err initially in reviewing the materials, the court improperly relied on them to refute Mr. Gee's factual assertions and effectively convert the motion to one for summary judgment."  627 F.3d at 1186-87.  In other cases, the Tenth Circuit has emphasized that, "[b]ecause the district court considered facts outside of the complaint, however, it is clear that the district court dismissed the claim under Rule 56(c) and not Rule 12(b)(6)."  Nard v. City of Okla. City, 153 F. App'x 529, 534 n.4 (10th Cir. 2005)(unpublished).[2]  In Douglas v.

---

[2]Nard v. City of Okla. City is an unpublished opinion, but the Court can rely on an unpublished United States Court of Appeals for the Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

In this circuit, unpublished orders are not binding precedent, . . . [a]nd we have generally determined that citation to unpublished opinions is not favored.

Norton, 167 F. App'x 698 (10th Cir. 2006)(unpublished), the Tenth Circuit addresses an untimely

filed charge with the Equal Employment Opportunity Commission -- whose deadline the Tenth

Circuit analogizes to a statute of limitations -- and concludes that, because the requirement is not

jurisdictional, the district court should have analyzed the question under rule 12(b)(6), and

"because the district court considered evidentiary materials outside of Douglas' complaint, it

should have treated Norton's motion as a motion for summary judgment."  167 F. App'x at 704-

05.

On the other hand, in a securities class action, the Court has ruled that a defendant's

operating certification, to which the plaintiffs refer to in their complaint, and which was central to

whether the plaintiffs adequately alleged a loss, falls within an exception to the general rule, so the

Court may consider the operating certification when ruling on the defendant's motion to dismiss

without converting the motion into one for summary judgment.  See Genesee Cty. Emps.' Ret.

Sys. v. Thornburg Mortg. Secs. Tr. 2006-3, 825 F. Supp. 2d 1082, 1150-51 (D.N.M.

2011)(Browning, J.).  See also Sec. & Exch. Comm'n v. Goldstone, 952 F. Supp. 2d 1060, 1217-

18 (D.N.M. 2013)(Browning, J.)(considering, on a motion to dismiss, electronic mail

transmissions referenced in the complaint as "documents referred to in the complaint," which are

---

However, if an unpublished opinion or order and judgment has persuasive value
with respect to a material issue in a case and would assist the court in its disposition,
we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that Nard v.
City of Okla. City, and the other published opinions cited herein, see Douglas v. Norton, 167
F. App'x 698 (10th Cir. 2006), Rhoads v. Miller, 352 F. App'x 289 (10th Cir. 2009), Poche v.
Joubran, 389 F. App'x. 768 (10th Cir. 2010), and Wallace v. United States, 372 F. App'x. 826
(10th Cir. 2010), have persuasive value with respect to a material issue, and will assist the Court
in its disposition of this Memorandum Opinion.

"central to the plaintiff's claim" and whose authenticity the plaintiff did not challenge); Mata v. Anderson, 760 F. Supp. 2d 1068, 1101 (D.N.M. 2009)(Browning, J.)(relying on documents outside of the complaint because they were "documents that a court can appropriately view as either part of the public record, or as documents upon which the Complaint relies, and the authenticity of which is not in dispute").

## LAW REGARDING DOCUMENTS OUTSIDE THE PLEADINGS ON A MOTION TO DISMISS

Generally, the sufficiency of a complaint must rest on its contents alone.  See Casanova v. Ulibarri, 595 F.3d 1120, 1125 (10th Cir. 2010); Gossett v. Barnhart, 139 F. App'x. 24, 24 (10th Cir. 2005)(unpublished)("In ruling on a motion to dismiss, the district court is limited to the facts pled in the complaint.").  Emphasizing this point, the Tenth Circuit, in Carter v. Daniels, 91 F. App'x. 83 (10th Cir. 2004)(unpublished), stated: "When ruling on a Rule 12(b)(6) motion, the district court must examine only the plaintiff's complaint. The district court must determine if the complaint alone is sufficient to state a claim; the district court cannot review matters outside of the complaint."  91 F. App'x. at 85.  There are three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference, see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," Jacobsen v. Deseret Book Co., 287 F.3d at 941; and (iii) "matters of which a court may take judicial notice," Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 322.  "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record."  Van Woudenberg v. Gibson, 211 F.3d 560, 568 (10th Cir. 2000), abrogated on other grounds by McGregor v. Gibson, 248 F.3d 946, 955 (10th Cir. 2001).  In Gee

v. Pacheco, 627 F.3d 1178 (10th Cir. 2010), the defendants "supported their motion with numerous documents, and the district court cited portions of those motions in granting the [motion to dismiss]."  627 F.3d at 1186.  The Tenth Circuit held that "[s]uch reliance was improper" and that, even if "the district court did not err initially in reviewing the materials, the court improperly relied on them to refute Mr. Gee's factual assertions and effectively convert the motion to one for summary judgment."  Gee v. Pacheco, 627 F.3d at 1186-87.

The Court has previously ruled that, when determining whether to toll a statute of limitations in an action alleging fraud and seeking subrogation from a defendant, the Court may not use interviews and letters attached to a motion to dismiss, which evidence that a plaintiff was aware of the defendant's alleged fraud before the statutory period expired, in the Court's ruling. See Great Am. Co. v. Crabtree, No. CIV 11-1129 JB/KBM, 2012 WL 3656500, at *3, **22–23 (D.N.M. Aug. 23, 2012)(Browning, J.).  The Court determined that the documents did not fall within any of the Tenth Circuit's exceptions to the general rule that a complaint must rest on the content's sufficiency alone, as the complaint did not incorporate the documents by reference, or refer to the documents. See 2012 WL 3656500, at **22–23; Mocek v. City of Albuquerque, No. CIV 11-1009, 2013 WL 312881, at *50 (D.N.M. 2013)(Browning, J.)(refusing to consider statements that were not "central to [the Plaintiff's] claims").

On the other hand, in a securities class-action, the Court has found that a defendant's operating certification, to which plaintiffs refer in their complaint, and which is central to whether the plaintiffs' adequately alleged a loss, falls within an exception to the general rule, and the Court may consider the operating certification when ruling on the defendant's motion to dismiss without converting the motion into one for summary judgment.  See Genesee Cty Emps.' Retirement Sys. v. Thornburg Mortg. Secs. Trust 2006–3, 825 F. Supp. 2d 1082, 1150-51 (D.N.M.

2011)(Browning, J.); Mata v. Anderson, 760 F. Supp. 2d 1068, 1101 (D.N.M. 2009)(Browning,

J.)(relying on documents outside of the complaint because they were "documents that a court can

appropriately view as either part of the public record, or as documents upon which the Complaint

relies, and the authenticity of which is not in dispute"); Gallegos v. Bernalillo Cty. Bd. of Cty.

Comm'rs, 278 F. Supp. 3d 1245, 1259-60 (D.N.M. 2017)(Browning, J.).

## LAW REGARDING AMENDMENTS TO PLEADINGS

Rule 15(a) provides that a party may amend his or her pleading as a matter of right within

twenty-one days of serving it and within twenty-one days of the service of a response pleading.

See Fed. R. Civ. P. 15(a).  Otherwise, the party must obtain the opposing parties' consent or the

court's leave -- which should be "freely give[n] . . . when justice so requires" -- to amend his or

her pleading.  Rule 15(a) provides:

> (a)    Amendments Before Trial.
>
> (1)    Amending as a Matter of Course.  A party may amend its pleading once as a matter of course within:
>
> > (A)    21 days serving it, or
> >
> > (B)    if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> (2)    Other Amendments.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.
>
> (3)    Time to Respond.  Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

Fed. R. Civ. P. 15(a).  Under rule 15(a), the court should freely grant leave to amend a pleading

where justice so requires.  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. 571, 579-80 (D.N.M. 2010)(Browning, J.).  The Supreme Court has stated that, in the absence of an apparent reason such as "undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.," leave to amend should be freely given.  Foman v. Davis, 371 U.S. 178, 182 (1962).  Furthermore, the Tenth Circuit has held that district courts should grant a plaintiff leave to amend when doing so would yield a meritorious claim.  See Curley v. Perry, 246 F.3d 1278, 1284 (10th Cir. 2001); In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.

A court should deny leave to amend under rule 15(a), however, where the proposed "amendment would be futile."  Jefferson Cty. Sch. Dist. v. Moody's Investor's Serv., 175 F.3d 848, 859 (10th Cir. 1999).  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.  An amendment is "futile" if the pleading, "as amended, would be subject to dismissal."  In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80 (citing TV Commc'ns Network, Inc. v. Turner Network Television, Inc., 964 F.2d 1022, 1028 (10th Cir. 1992)).  A court may also deny leave to amend "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, [or] failure to cure deficiencies by amendments previously allowed."  In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579 (quoting Frank v. U.S. W., Inc., 3 F.3d 1357, 1365-66 (10th Cir. 1993)).  "The . . . Tenth Circuit has emphasized that '[t]he purpose of [rule 15(a)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"  B.T. ex rel. G.T. v. Santa Fe Pub. Sch., No. 05-1165, 2007 WL 1306814, at *2 (D.N.M. March 12, 2007)(Browning, J.)(quoting Minter v. Prime Equip. Co., 451 F.3d 1196, 1204 (10th Cir. 2006)).

## LAW REGARDING ELEVENTH AMENDMENT IMMUNITY

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Supreme Court has construed Eleventh Amendment immunity to prohibit federal courts from entertaining suits against States that their own citizens or citizens of another State bring without the State's consent.  See Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990).  State agencies and State officials likewise enjoy immunity as "an arm of the state."  Mt. Healthy City Bd. of Ed. v. Doyle, 429 U.S. 274, 280-81 (1977).

Exceptions to a State's Eleventh Amendment immunity are few.  See, e.g., Ex Parte Young, 209 U.S. 123, 159-60 (1908).

> "If the act which the state attorney general seeks to enforce be a violation of the Federal Constitution, the officer, in proceeding under such enactment, comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct.  The state has no power to impart to him any immunity from responsibility to the supreme authority of the United States.

Ex Parte Young, 209 U.S. at 159-60.  A State may, however, voluntarily waive its immunity.  See Edelman v. Jordan, 415 U.S. 651, 673 (1974).  Congress also may abrogate Eleventh Amendment immunity pursuant to Section 5 of the Fourteenth Amendment to the Constitution of the United States, where the statute explicitly manifests Congress' intent to abrogate a State's immunity.  See Fitzpatrick v. Bitzer, 427 U.S. 445, 456 (1976).  Congress did not abrogate, however, Eleventh Amendment immunity when enacting 42 U.S.C. § 1983.  See Quern v. Jordan, 440 U.S. 332, 340 (1979).  Consequently, Eleventh Amendment immunity extends to defendants under that statute, and claims against the state pursuant to § 1983 in the federal courts are barred as a matter of law.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989).

Although not characterized properly as an exception to a State's Eleventh Amendment immunity, the doctrine that the Supreme Court announced in Ex Parte Young, 209 U.S. at 128, allows for suits against state officials under certain circumstances.  See Elephant Butte Irrigation Dist. of N.M. v. Dep't of the Interior, 160 F.3d 602, 607-08 (10th Cir. 1998)("The Ex Parte Young doctrine is not actually an exception to Eleventh Amendment state immunity because it applies only when the lawsuit involves an action against state officials, not against the state.").  In Ex Parte Young, the Supreme Court held that the Eleventh Amendment bar generally does not apply in federal court to State officials defending against suit which seeks only prospective relief from violations of federal law.  See Ex Parte Young, 209 U.S. at 28.  The Ex Parte Young doctrine allows suit to proceed against defendant State officials if the following requirements are met: (i) the plaintiffs are suing State officials rather the State itself; (ii) the plaintiffs have alleged a non-frivolous violation of federal law; (iii) the plaintiffs seek prospective equitable relief rather than retroactive monetary relief from the State treasury; and (iv) the suit does not implicate special sovereignty interests.  See Elephant Butte Irrigation Dist. of N.M. v. Dep't of the Interior, 160 F.3d at 609.

## LAW REGARDING 42 U.S.C. § 1983 CLAIMS

Section 1983 of Title 42 of the United States Code provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or from a federal statute.  See Nelson

v. Geringer, 295 F.3d 1082, 1097 (10th Cir. 2002)("[S]ection 1983 'did not create any substantive

rights, but merely enforce[s] existing constitutional and federal statutory rights . . . .'" (second

alteration added by Nelson v. Geringer)(quoting Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186,

1197 (10th Cir. 1998))).  Section 1983 authorizes an injured person to assert a claim for relief

against a person who, acting under color of state law, violated the claimant's federally protected

rights.  See 42 U.S.C. § 1983.  To state a claim upon which relief can be granted under § 1983, a

plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the

plaintiff of that right acted under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988).

The Court has noted:

> [A] plaintiff "must establish (1) a violation of rights protected by the federal
> Constitution or created by federal statute or regulation, (2) proximately caused
> (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance,
> regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Schaefer v. Las Cruces Pub. Sch. Dist., 716 F. Supp. 2d 1052, 1063 (D.N.M.

2010)(Browning, J.)(second alteration in original)(quoting Martinez v. Martinez, No. CIV 09-

0281 JB/KBM, 2010 WL 1608884, at *11 (D.N.M. March 30, 2010)(Browning, J.)).

The Supreme Court has clarified that, in alleging a § 1983 action against a government

agent in his or her individual capacity, "a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft

v. Iqbal, 556 U.S. at 676.  Consequently, there is no respondeat superior liability under § 1983.

See Ashcroft v. Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens*[3] and

---

[3]In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)("Bivens"), the Supreme Court held that a violation of the Fourth Amendment of the Constitution of the United States "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct."  Bivens, 403 U.S. at 389.  Thus, in a Bivens action, a plaintiff may seek damages when a federal officer acting in the

§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  Entities cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 689 (1978).  Supervisors can be held liable only for their own unconstitutional or illegal policies, and not for their employees' tortious acts.  See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

The Tenth Circuit recognizes that non-supervisory defendants may be liable if they knew, or reasonably should have known that their conduct would lead to the deprivation of a plaintiff's constitutional rights by others, and an unforeseeable intervening act has not terminated their liability.  See Martinez v. Carson, 697 F.3d 1252, 1255 (10th Cir. 2012); Trask v. Franco, 446 F.3d 1036, 1046 (10th Cir. 2006).  The Tenth Circuit also recognizes that Ashcroft v. Iqbal limits, but did not eliminate, supervisory liability for government officials based on an employee's or subordinate's constitutional violations.  See Garcia v. Casuas, No. CIV 11-0011 JB/RHS, 2011 WL 7444745, at *25-26 (D.N.M. Dec. 8, 2011)(Browning, J.)(citing Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010)).  The language that may have altered the landscape for supervisory liability in Ashcroft v. Iqbal is: "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. at 676.  The Tenth Circuit in Dodds v. Richardson states:

Whatever else can be said about *Iqbal*, and certainly much can be said, we conclude

_____

color of federal authority violates the plaintiff's constitutional rights.  See Bivens, 403 U.S. at 389. See also Ashcroft v. Iqbal, 556 U.S. at 675-76 (stating that Bivens actions are the "federal analog" to § 1983 actions).

the following basis of § 1983 liability survived it and ultimately resolves this case:
§ 1983 allows a plaintiff to impose liability upon a defendant-supervisor who
creates, promulgates, implements, or in some other way possesses responsibility
for the continued operation of a policy the enforcement (by the defendant-
supervisor or her subordinates) of which "subjects, or causes to be subjected" that
plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

614 F.3d at 1199 (quoting 42 U.S.C. § 1983).  The Tenth Circuit has noted, however, that "*Iqbal*

may very well have abrogated § 1983 supervisory liability as we previously understood it in this

circuit in ways we do not need to address to resolve this case."  Dodds v. Richardson, 614 F.3d

at 1200.  It concluded that Ashcroft v. Iqbal does not alter "the Supreme Court's previously

enunciated § 1983 causation and personal involvement analysis."  Dodds v. Richardson, 614 F.3d

at 1200.  More specifically, the Tenth Circuit recognized that there must be "an 'affirmative' link

. . . between the unconstitutional acts by their subordinates and their 'adoption of any plan or policy

. . . -- express or otherwise -- showing their authorization or approval of such misconduct.'"  Dodds

v. Richardson, 614 F.3d at 1200-01 (quoting Rizzo v. Goode, 423 U.S. 362, 371 (1976)).

The specific example that the Tenth Circuit uses to illustrate this principle is Rizzo v.

Goode, where the plaintiff sought to hold a mayor, a police commissioner, and other city officials

liable under § 1983 for constitutional violations that unnamed individual police officers

committed.  See Dodds v. Richardson, 614 F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at

371).  The Tenth Circuit notes that the Supreme Court in that case found a sufficient link between

the police misconduct and the city officials' conduct, because there was a deliberate plan by some

of the named defendants to "'crush the nascent labor organizations.'"  Dodds v. Richardson, 614

F.3d at 1200 (quoting Rizzo v. Goode, 423 U.S. at 371).

### LAW REGARDING DIVERSITY JURISDICTION AND ERIE

Under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1983)("Erie"), a federal district court

sitting in diversity applies "state law with the objective of obtaining the result that would be reached in state court." Butt v. Bank of Am., N.A., 477 F.3d 1171, 1179 (10th Cir. 2007). Accord Mem. Hosp. v. Healthcare Realty Tr. Inc., 509 F.3d 1225, 1229 (10th Cir. 2007). The Court has held that if a district court exercising diversity jurisdiction cannot find a Supreme Court of New Mexico "opinion that [governs] a particular area of substantive law . . . [the district court] must . . . predict how the Supreme Court of New Mexico would [rule]." Guidance Endodontics, LLC v. Dentsply Int'l., Inc., 708 F. Supp. 2d 1209, 1224-25 (D.N.M. 2010)(Browning, J.). "Just as a court engaging in statutory interpretation must always begin with the statute's text, a court formulating an Erie prediction should look first to the words of the state supreme court." Peña v. Greffet, 110 F. Supp. 3d 1103, 1132 (D.N.M. 2015)(Browning, J.).[4] If the Court finds only an

---

[4]In performing its Erie-mandated duty to predict what a state supreme court would do if faced with a case, see Comm'r v. Estate of Bosch, 387 U.S. 456 (1987), a federal court may sometimes contradict the state supreme court's own precedent if the federal court concludes that the state supreme court would, given the opportunity, overrule its earlier holding, see Anderson Living Trust v. WPX Energy Prod., LLC, 27 F. Supp. 3d 1188, 1247 n.30 (D.N.M. 2014)(Browning, J.). Courts should, obviously, be reticent to formulate an Erie prediction that conflicts with state-court precedent; even if the prediction turns out to be correct, such predictions produce disparate results between cases filed in state and federal courts, as the old state supreme court precedent usually binds state trial courts. The factors to which a federal court should look before making an Erie prediction that a state supreme court will overrule its prior precedent vary depending upon the case, but some consistent ones include: (i) the age of the state supreme court decision from which the federal court is considering departing -- the younger the state case is, the less likely it is that departure is warranted; (ii) the amount of doctrinal reliance that the state courts -- especially the state supreme court -- have placed on the state decision from which the federal court is considering departing; (iii) apparent shifts away from the doctrine that the state decision articulates, especially if the state supreme court has explicitly called an older case's holding into question; (iv) changes in the composition of the state supreme court, especially if mostly dissenting justices from the earlier state decision remain on the court; and (v) the decision's patent illogic or its inapplicability to modern times. See Peña v. Greffet, 110 F. Supp. 3d at 1132 n.17. In short, a state supreme court case that a federal court Erie predicts will be overruled is likely to be very old, neglected by subsequent state-court cases -- perhaps because it is in a dusty corner of the common law which does not get much attention or have much application -- and clearly wrong.

opinion from the Court of Appeals of New Mexico, while "certainly [the Court] may and will consider the Court of Appeal[s'] decision in making its determination, the Court is not bound by the Court of Appeal[s'] decision in the same way that it would be bound by a Supreme Court decision." Mosley v. Titus, 762 F. Supp. 2d 1298, 1332 (D.N.M. 2010)(Browning, J.)(noting that where the only opinion on point is "from the Court of Appeals, . . . the Court's task, as a federal district court sitting in this district, is to predict what the Supreme Court of New Mexico would do if the case were presented to it" (citing Wade v. EMCASCO Ins., 483 F.3d 657, 666 (10th Cir. 2007)(explaining that, "[w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do," and that, "[i]n doing so, it may seek guidance from decisions rendered by lower courts in the relevant state")))[5] The Court may also rely on

---

[5]The Supreme Court has addressed what the federal courts may use when there is not a decision on point from the state's highest court:

> The highest state court is the final authority on state law, but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State. An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question. We have declared that principle in *West v. American Telephone and Telegraph Co.*, 311 U.S. 223 (1940), decided this day. It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law.
>
> . . . We have held that the decision of the Supreme Court upon the construction of a state statute should be followed in the absence of an expression of a countervailing view by the State's highest court, and we think that the decisions of the Court of Chancery [the New Jersey trial court] are entitled to like respect as announcing the law of the State.

Tenth Circuit decisions interpreting New Mexico law.  See Anderson Living Trust v. WPX Energy

Prod., LLC, 27 F. Supp. 3d at 1243 & n.30.[6]  Ultimately, "the Court's task is to predict what the

---

    . . . .

       The question has practical aspects of great importance in the proper administration of justice in the federal courts.  It is inadmissible that there should be one rule of state law for litigants in the state courts and another rule for litigants who bring the same question before the federal courts owing to the circumstance of diversity of citizenship.  In the absence of any contrary showing, the rule [set forth by two New Jersey trial courts, but no appellate courts] appears to be the one which would be applied in litigation in the state court, and whether believed to be sound or unsound, it should have been followed by the Circuit Court of Appeals.

Fid. Union Tr. Co. v. Field, 311 U.S. 169, 177-80 (1940)(footnotes and citations omitted).  The Supreme Court has softened this position over the years; federal courts are no longer bound by state trial or intermediate court opinions, but "should attribute [them] some weight . . . where the highest court of the State has not spoken on the point."  Comm'r v. Estate of Bosch, 387 U.S. at 465 (citing King v. Order of United Commercial Travelers, 333 U.S. 153, 159 (1948)).  See 17A James Wm. Moore et al., Moore's Federal Practice § 124.20 (3d ed. 1999)("Decisions of intermediate state appellate courts usually must be followed . . . [and] federal courts should give some weight to state trial courts decisions."  (emphasis and title case omitted)).

    [6]In determining the proper weight to accord Tenth Circuit precedent interpreting New Mexico law, the Court must balance the need for uniformity between federal court and state court interpretations of state law with the need for uniformity among federal judges.  If the Court adheres too rigidly to Tenth Circuit case law, ignoring changes undergone by a state's law in the ensuing years, then parties litigating state-law claims will be subject to a different body of substantive law, depending on whether they litigate in state court or federal court.  This result frustrates the purpose of Erie, which held that federal courts must apply state court interpretations of state law, rather than their own, in part so that parties achieve a consistent result regardless of the forum.  This consideration pulls the Court toward according Tenth Circuit precedent less weight and according state court decisions issued in the ensuing years more weight.  On the other hand, when the state law is unclear, it is desirable for there to at least be uniformity among federal judges as to its proper interpretation.  Otherwise, different federal judges within the same circuit -- or even the same district, as district courts' decisions are not binding, even upon themselves -- would be free to adopt differing interpretations of a state's law.  This consideration pulls the Court towards a stronger respect for vertical stare decisis, because a Tenth Circuit decision on point -- regardless whether it accurately reflects state law --at least provides consistency at the federal level, so long federal district judges are required to follow it.

The Court must decide how to weigh Tenth Circuit case law against more-recent state court decisions, choosing a point on the spectrum between the two extremes: rigidly adhering to Tenth Circuit precedent unless there is intervening case law directly on point from the state's highest court, on one end; and independently interpreting the state law, regarding the Tenth Circuit precedent as no more than persuasive authority, on the other. In striking this balance, the Court notes that it is generally more concerned about systemic inconsistency between the federal courts and the state courts than it is about inconsistency among federal judges. Judges, even those within a jurisdiction with ostensibly identical governing law, sometimes interpret and apply the law differently from one another; this inconsistency is part and parcel of a common-law judicial system. More importantly, litigants seeking to use forum selection to gain a substantive legal advantage cannot easily manipulate such inconsistency: cases are assigned randomly to district judges in this and many federal districts; and, regardless, litigants cannot know for certain how a given judge will interpret the state law, even if they could determine the identity of the judge pre-filing or pre-removal. All litigants know in advance is that whomever federal district judge they are assigned will look to the entirety of the state's common law in making his or her determination -- the same as a state judge would. Systemic inconsistency between the federal courts and state courts, on the other hand, not only threatens the principles of federalism, but litigants may more easily manipulate the inconsistency. When the Tenth Circuit issues an opinion interpreting state law, and the state courts subsequently shift away from that interpretation, litigants -- if the district courts strictly adhere to the Tenth Circuit opinion -- have a definite substantive advantage in choosing the federal forum over the state forum, or vice versa.

The Court further notes that district courts may be in a better position than the Tenth Circuit to be responsive to changes in state law. Tenth Circuit decisions interpreting a particular state's law on a specific issue are further apart in time than the collective district courts' are. More importantly, the Tenth Circuit does not typically address such issues with the frequency that the state's courts themselves do. As such, Tenth Circuit precedent can lag behind developments in state law -- developments that the district courts may be nimble enough to perceive and adopt. Additionally, much of the benefit of having a consistent Tenth Circuit-wide interpretation of a particular state's law is wasted. Other than Oklahoma, every state encompassed by the Tenth Circuit contains only one federal judicial district, and there is relatively little need for federal judges in Wyoming and Kansas to have a uniform body of New Mexico law to which to look. Last, the Court notes, respectfully, that district courts may be in a better position than the Tenth Circuit to develop expertise on the state law of the state in which they sit. Every federal judicial district in the nation, except the District of Wyoming, covers at most one state. It is perhaps a more workable design for each district court to keep track of legal developments in the state law of its own state(s) than it is for the Tenth Circuit to monitor separate legal developments in eight states.

Having outlined the relevant considerations, the Court thinks the proper stance on vertical stare decisis in the context of federal court interpretations of state law is as follows: the Tenth Circuit's cases are binding as to their precise holding -- what the state law was on the day the

---

opinion was published -- but lack the positive precedential force that its cases interpreting a federal statute or the federal Constitution possess. A district court considering a state law issue after the publication of a Tenth Circuit opinion on point may not come to a contrary conclusion based <u>only</u> on state court cases that were available to the Tenth Circuit and that the Tenth Circuit considered, but it may come to such a conclusion based on intervening state court cases.

When interpreting state law, the Tenth Circuit does not and cannot issue a case holding that *x* is the law in New Mexico; it holds that the <u>proper interpretation</u> of New Mexico law, at the time the opinion is released, is *x*. Its holdings are descriptive, not prescriptive -- interpretive, not normative. Because federal judicial opinions lack independent substantive force on state law issues, but possess such force regarding federal law issues, the Court thinks the following is not an unfair summary of the judicial interpretive process: (i) when interpreting federal law, the federal appellate courts consider the existing body of law, and then issue a holding that both reflects and influences the body of law; that holding subsequently becomes a part of the body of law; but (ii) when interpreting state law, the federal appellate courts consider the existing body of law, and then issue a holding that only reflects the body of law; that holding does not subsequently become a part of the body of law. The federal district courts are bound to conclude that the Tenth Circuit's reflection of the then-existing body of law was accurate. The question is whether they should build a doctrine atop the case and use the existence of the Tenth Circuit's case to avoid any responsibility to independently consider the whole body of state law that exists when the time comes that diversity litigants raise the issue in their courtrooms. Giving such effect to the Tenth Circuit's interpretations of state law is at tension with <u>Erie</u>, giving independent substantive effect to federal judicial decisions -- <u>i.e.</u>, applying federal law -- in a case brought in diversity.

The purpose of <u>Erie</u> is well-known and simple, and the Court should not complicate it beyond recognition: it is that the same substantive law governs litigants' cases regardless whether they are brought in a federal or state forum. For simplicity's sake, most courts have settled on the formulation that "the federal court must attempt to predict how the states' highest court would rule if confronted with the issue." <u>Moore's Federal Practice</u> § 124.22[3] (citing <u>Comm'r v. Estate of Bosch</u>, 387 U.S. at 465 ("[A]n intermediate appellate state court [decision] is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." (citation and internal quotation marks omitted))). This formulation may not be the most precise one if the goal is to ensure identical outcomes in state and federal court -- the Honorable Milton I. Shadur, United States District Judge, looks to state procedural rules to determine in which state appellate circuit the suit would have been filed were it not in federal court, and then applies the state law as that circuit court interprets it, <u>see</u> <u>Abbott Labs. v. Granite State Ins.</u>, 573 F. Supp. 193, 196-200 (N.D. Ill. 1983)(Shadur, J.)(noting that the approach of predicting the state supreme court's holdings will often lead to litigants obtaining a different result in federal court than they would in state court, where only the law of the circuit in which they filed -- and certainly not nonexistent, speculative state supreme court law -- governs) -- but it is a workable solution that has achieved consensus. <u>See</u> <u>Allstate Ins. v. Menards, Inc.</u>, 285 F.3d 630, 637 (7th Cir. 2002)("[W]e adhere today to the general rule, articulated and applied throughout the United States, that, in determining the content of state law, the federal courts must assume the perspective of the highest court in that state and attempt to ascertain the governing substantive law on the point in question."). This formulation, built out of ease-of-use, does not relieve courts of their Supreme Court-mandated obligation to

consider state appellate and trial court decisions.  To the contrary, even non-judicial writings by influential authors, statements by state supreme court justices, the closeness of the vote on a prior case addressing the issue, and personnel changes on the court -- considerations that would never inform a federal court's analysis of federal law -- may validly come into play.  The question is whether the district courts must abdicate, across-the-board, the "would decide" aspect of the Erie analysis to their parent appellate courts when the Court of Appeals has declared an interpretation of state law.

The Erie doctrine results in federal cases that interpret state law withering with time.  While cases interpreting federal law become more powerful over time -- forming the groundwork for doctrines, growing upward from one application (Congress may create a national bank) to many (Congress may set quotas on wheat-growing for personal consumption), expanding outward from the general (states must grant criminal jury trials) to the specific (the jury need not be twelve people, nor must it be unanimous) -- federal cases interpreting state law often become stale.  New state court cases -- even when not directly rebuking the federal court's statement of law -- alter the common-law legal landscape with their dicta, their insinuations, and their tone.  The Supreme Court, which picks its cases sparingly and for maximum effect, almost never grants certiorari to resolve issues of state law.

The Court's views on Erie, of course, mean little if the Tenth Circuit does not agree.  In Wankier v. Crown Equipment Corp., the Tenth Circuit said that,

> [w]here no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do.  In performing this ventriloquial function, however, the federal court is bound by ordinary principles of *stare decisis*.  Thus, when a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue.

Wankier v. Crown Equip. Corp., 353 F.3d 862, 866 (10th Cir. 2003)(McConnell, J.).  From this passage, it seems clear that the Tenth Circuit permits a district court to deviate from its view of state law only on the basis of a subsequent case "of the state's highest court."  The American Heritage Dictionary of the English Language 1402 (William Morris ed., New College ed. 1976)(defining "unless" as "[e]xcept on the condition that; except under the circumstances that").  A more aggressive reading of the passage -- namely the requirement that the intervening case "resolv[e] the issue," Wankier v. Crown Equip. Corp., 353 F.3d at 866 -- might additionally compel the determination that any intervening case law must definitively and directly contradict the Tenth Circuit interpretation to be considered "intervening."

It is difficult to know whether Judge McConnell's limitation of "intervening decision" to cases from the highest state court was an oversight or intentional.  Most of the Tenth Circuit's previous formulations of this rule have defined intervening decisions inclusively as all subsequent decisions of "that state's courts," a term which seems to include trial and intermediate appellate courts.  Even Koch v. Koch Industries, Inc., 203 F.3d 1202, 1231 (10th Cir. 2000), the primary authority upon which Wankier v. Crown Equipment Corp. relies, uses the more inclusive definition.  In fact, Wankier v. Crown Equipment Corp. quotes its relevant passage:

state supreme court would do." Wade v. EMCASCO Ins. Co., 483 F.3d at 666.  Accord Mosley

v. Titus, 762 F. Supp. 2d at 1332 (citation omitted); Rimbert v. Eli Lilly & Co., 577 F. Supp. 2d

1174, 1188-89 (D.N.M. 2008)(Browning, J.).

## LAW REGARDING THE NMTCA

The New Mexico Legislature enacted the NMTCA because it recognized "the inherent

unfair and inequitable results which occur in the strict application of the doctrine of sovereign

immunity."  N.M.S.A. § 41-4-2(A).  The New Mexico Legislature, however, also recognized

> that while a private party may readily be held liable for his torts within the chosen
> ambit of his activity, the area within which the government has the power to act for
> the public good is almost without limit, and therefore government should not have
> the duty to do everything that might be done.

---

In the absence of intervening Utah authority indicating that a plaintiff is not
required to prove a safer, feasible alternative design, we are bound to follow the
rule of Allen [v. Minnstar, Inc., 8 F.3d 1470 (10th Cir. 1993), a Tenth Circuit case
interpreting an issue of Utah law], as was the district court. "Following the doctrine
of stare decisis, one panel of this court must follow a prior panel's interpretation of
state law, absent a supervening declaration to the contrary by that state's courts or
an intervening change in the state's law."  Koch v. Koch Indus., Inc., 203 F.3d at
1231.

Wankier v. Crown Equip. Corp., 353 F.3d at 867.
    Whether the decision to limit the intervening authority a district court can consider was
intentional or not, the Tenth Circuit has picked it up and run with it.  In Kokins v. Teleflex, Inc.,
the Tenth Circuit, quoting Wankier v. Crown Equipment Corp., refused to consider an opinion
from the Court of Appeals of Colorado holding directly the opposite of an earlier Tenth Circuit
interpretation of Colorado law.  See Kokins v. Teleflex, Inc., 621 F.3d 1290, 1297 (10th Cir.
2010)(Holmes, J.)("[T]he Colorado Court of Appeals decided Biosera[, Inc. v. Forma Scientific,
Inc., 941 P.2d 284 (Colo. Ct. App. 1998)], so it is not an 'intervening decision of the state's highest
court.'"  (emphasis in original)(quoting Wankier v. Crown Equip. Corp., 353 F.3d at 866)).
    The Tenth Circuit has set forth a stringent restriction on its district courts' ability to
independently administer the Erie doctrine.  More importantly, the Tenth Circuit's view may be at
tension with the above-quoted Supreme Court precedent, as well as its own prior case law.
Moore's lists the Tenth Circuit as having been, at one time, a "court[ that] hold[s] that a prior
federal appellate decision [interpreting state law] is persuasive."  Moore's § 124.22[4] (citing State
Farm Mut. Auto. Ins. v. Travelers Indem. Co., 433 F.2d 311, 312 (10th Cir. 1970)).  Still, the Court
is bound to abide by the Tenth Circuit's interpretation of Erie.

N.M.S.A. § 41-4-2(A).  As a result, it was "declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act."  N.M.S.A. § 41-4-2(A). The NMTCA is also "based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty."  N.M.S.A. § 41-4-2(C).  The NMTCA is the

> exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim.

N.M.S.A. § 41-4-17(A).

A plaintiff may not sue a New Mexico governmental entity or its employees or agents unless the plaintiff's cause of action fits within one of the exceptions that the NMTCA grants for governmental entities and public employees.  See Begay v. State, 1985-NMCA-117 ¶ 10, 723 P.2d 252, 256 ("Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act."),[7] rev'd on other grounds sub nom. Smialek v. Begay, 1986-

---

[7]The Court predicts that the Supreme Court of New Mexico, if presented with the issue, would agree with Begay v. State that, for a plaintiff to sue a governmental entity, the entity must come within one of the NMTCA's exceptions, and that a plaintiff may not imply the governmental entity's consent to suit.  Section 41-4-2 provides in part: "[I]t is declared to be the public policy of New Mexico that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act."  N.M. Stat. Ann. § 41-4-2.  The NMTCA also states that governmental entities and public employees acting in the scope of their duties shall be immune from liability for torts except as the NMTCA waives.  See N.M. Stat. Ann. § 41-4-4.  The Supreme Court of New Mexico has consistently reaffirmed that, for a plaintiff to sue a governmental entity or public employee acting within the scope of his or her duties, an NMTCA immunity waiver must apply.  See, e.g., Thompson v. City of Albuquerque, 2017-NMSC-021 ¶ 6, 397 P.3d 1279, 1281; Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't, 1996-NMSC-021 ¶ 6, 916 P.2d at 1313; Silva v. State, 1987-NMSC-107, ¶ 41, 745 P.2d 380, 388.

NMSC-049, 721 P.2d 1306.  "A plaintiff also may not sue a governmental entity or its employees for a damage claim arising out of violations of rights under the New Mexico Constitution unless the NMTCA contains a waiver of immunity."  Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1251 (D.N.M. 2010)(Browning, J.), aff'd, 499 F. App'x 771 (10th Cir. 2012)(unpublished). Accord Barreras v. State of N.M. Corr. Dep't, 2003-NMCA-027 ¶ 24, 62 P.3d 770, 776 ("In the absence of affirmative legislation, the courts of this state have consistently declined to permit individuals to bring private lawsuits to enforce rights guaranteed by the New Mexico Constitution, based on the absence of an express waiver of immunity under the Tort Claims Act.");[8] Chavez v. City of Albuquerque, 1998-NMCA-004 ¶ 8, 952 P.2d 474, 477 (noting that a plaintiff cannot seek damages for violations of rights under the New Mexico Constitution against a city or its employees or agents unless the NMTCA waives immunity);[9] Archibeque v. Moya, 1993-NMSC-079 ¶ 5, 866 P.2d at 346 (concluding that public employees acting within the scope of their duties are "granted immunity from liability for any tort except as waived by Sections 41-4-5 through 41-4-12"); Rubio v. Carlsbad Mun. Sch. Dist., 1987-NMCA-127 ¶ 11, 744 P.2d 919, 922 (holding that no waiver of

---

[8]The Court predicts that the Supreme Court of New Mexico, if presented with the issue, would agree with Barreras v. State of New Mexico Corrections Department that, absent affirmative legislation, New Mexico courts do not permit private lawsuits to enforce New Mexico constitutional rights if no NMTCA immunity waiver applies.  In Begay v. State, the Supreme Court of New Mexico dismissed plaintiff's state constitutional claims against a governmental entity, because no NMTCA waiver applied.  See Begay v. State, 1985-NMCA-117 ¶ 14, 723 P.2d at 257 ("We have determined that plaintiffs may not sue the state without its consent and that there is no express waiver for the medical examiner under the Tort Claims Act.").  The Court notes that in Begay v. State, as discussed supra n.16, clarifies that "[c]onsent to be sued may not be implied" under the NMTCA.  Begay v. State, 1985-NMCA-117 ¶ 10, 723 P.2d 252, 256.

[9]For the reasons discussed supra n.13, the Court concludes that the Supreme Court of New Mexico would, if presented with the issue, agree with this assertion in Chavez v. City of Albuquerque.

immunity exists for damages arising out of alleged educational malpractice claim against a school

board);[10] Begay v. State, 1985-NMCA-117 ¶ 14, 723 P.2d at 257 (finding that no waiver exists in

NMTCA for suit for damages under Article II, § 11 of the New Mexico Constitution -- a provision

that protects the "free exercise of religion").  The NMTCA does not limit the availability of many

forms of equitable relief.  See N.M.S.A. § 41-4-17(A) ("Nothing in this section shall be construed

to prohibit any proceedings for mandamus, prohibition, habeas corpus, certiorari, injunction or quo

warranto."); El Dorado Utils. Inc. v. Eldorado Area Water and Sanitation Dist., 2005-NMCA-

036 ¶ 28, 109 P.3d 305, 312 ("The Tort Claims Act would not bar a claim for injunctive relief.").[11]

Thus, if no specific waiver can be found in the NMTCA, a plaintiff's complaint against the

governmental entity or its employees must be dismissed.  See Begay v. State, 1985-NMCA-117

¶ 8, 723 P.2d at 255.

The Court held in Williams v. Board of Regents of University of New Mexico, 20

F. Supp. 3d 1177 (D.N.M. 2014)(Browning, J.), that the NMTCA "'grant[s] governmental entities

---

[10]The Court predicts that the Supreme Court of New Mexico, if presented with the issue, would agree with the result in Rubio v. Carlsbad Municipal School District, because none of the express waivers under §§ 41-4-5 to -12 permit recovery for damages arising out of educational malpractice claims, and § 41-4-4(A) clearly exempts governmental entities and public employees acting within the scope of their duties from liability except as waived in sections 41-4-5 to -12. See N.M. Stat. Ann. §§ 41-4-5 to -12.  As discussed supra n.16, the Supreme Court of New Mexico requires an express NMTCA immunity waiver to permit an NMTCA suit against a governmental entity or a public employee acting within the scope of his or her duties.

[11]If presented with the issue, the Court predicts that the Supreme Court of New Mexico would agree with El Dorado Utilities, Inc. v. Eldorado Area Water and Sanitation District, that nothing in the NMTCA bars a separate claim for injunctive relief.  While the Supreme Court of New Mexico has clarified that the NMTCA is "the exclusive remedy for any action for damages against the government," Bd. of Cty. Comm'rs of San Miguel Cty. v. Risk Mgmt. Div., 1995-NMSC-046 ¶ 14, 899 P.2d 1132, 1135, the NMTCA limits only damages claims brought against the state or state employees acting within the scope of their duty and does not limit plaintiffs from seeking other forms of injunctive relief, see Bd. of Cty. Comm'rs of San Miguel Cty. v. Risk Mgmt. Div., 1995-NMSC-046 ¶ 14, 899 P.2d at 1135.

and employees a general immunity from tort liability, [and] waives that immunity in certain defined circumstances.'" Williams v. Board of Regents of University of New Mexico, 20 F. Supp. 3d at 1187 (quoting Cobos v. Doña Ana Cty. Hous. Auth., 1998-NMSC-049, ¶ 6, 970 P.2d 1143, 1145)(alterations added in Williams v. Bd. of Regents of Univ. of N.M.).  See Davis v. N.M. Dep't of Game & Fish, No. CIV 18-0415 LF-SCY, 2019 WL 943514, at *6 (D.N.M. Feb. 26, 2019)(Fashing, M.J.).  Moreover, the Supreme Court of New Mexico has added that "the doctrine of respondeat superior extends liability to the public entities that have supervisory control over the tortious actors."  Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't, 1996-NMSC-021, ¶ 14, 916 P.2d 1313, 1318 (citing Silva v. State, 1987-NMSC-107, ¶ 15, 745 P.2d 280, 385).  The Supreme Court of New Mexico has explained:

> A governmental entity is not immune from liability for any tort of its employee acting within the scope of duties for which immunity is waived.  A governmental entity is not immune from liability for any tort.  N.M.S.A. § 41-4-4(A).  When the act of the employee is the act of the public entity, let the master answer.  To the extent that prior cases have rejected the applicability of the tort doctrine of respondeat superior under the [NMTCA], . . . those cases are hereby overruled.

Silva v. State, 1987-NMSC-107, ¶ 15, 745 P.2d at 385 (alteration in the original)(citation omitted).

The NMTCA generally precludes awards of punitive damages.  See Brooks v. Bd. of Educ., No. Civ. 12-1249 MV/SMV, 2016 WL 8188562, at *17 (D.N.M. June 28, 2016)(Vázquez, J.)(concluding that "punitive damages are unavailable in this case because [New Mexico] state law bars punitive damages awards against state entities"); Torrance Cty. Mental Health Program v. N.M. Health & Env't Dep't, 1992-NMSC-026, ¶ 16, 830 P.2d 145, 149.  As the Supreme Court of New Mexico has held, the NMTCA contains an "express grant of immunity to the state from liability for punitive damages in an action for which immunity has been waived."  Torrance Cty. Mental Health Program v. N.M. Health & Env't Dep't, 1992-NMSC-026, ¶ 16, 830 P.2d 145, 149.

Specifically, N.M.S.A. § 41-4-19(D) states: "No judgment against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act shall include an award for exemplary or punitive damages or for interest prior to judgment." N.M.S.A. § 41-4-19(D).[12]

### LAW REGARDING NMTCA § 41-4-6

Section 41-4-6 exempts from immunity "liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." N.M.S.A. § 41-4-6. Section 41-4-6's exemption balances the principle that "government should not have the duty to do everything that might be done" with the desire "to compensate those injured by the negligence of public employees and to impose duties of reasonable care." Cobos v. Doña Ana Cty. Hous. Auth., 1998-NMSC-049 ¶ 6, 970 P.2d at 1145 (citations and internal quotation marks omitted). To resolve the tension between these two goals, § 41-4-6 "grant[s] governmental entities and employees a general immunity from tort liability, [and] waive[s] that immunity in certain defined circumstances." Cobos v. Doña Ana Cty. Hous. Auth., 1998-NMSC-049 ¶ 6, 970 P.2d at 1145. Section 41-4-6

> allows individual claims against governmental entities that are based on "the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment, or furnishings." [NMTCA § 41-4-6]. For the waiver to apply, the negligent

---

[12]The only exception of which the Court is aware is in N.M.S.A. § 41-4-4(C), which states:

A governmental entity shall pay any award for punitive or exemplary damages awarded against a public employee under the substantive law of a jurisdiction other than New Mexico, including other states, territories and possessions and the United States of America, if the public employee was acting within the scope of his duty.

N.M.S.A. § 41-4-4(C).

"operation or maintenance" must create a dangerous condition that threatens the general public or a class of users of the building.

Upton v. Clovis Mun. Sch. Dist., 2006-NMSC-040 ¶ 8, 141 P.3d at 1261.

The Supreme Court of New Mexico has adopted a broad interpretation of what constitutes a "building, public park, machinery, equipment, or furnishings." N.M.S.A. § 41-4-6. Like common-law premises liability, the § 41-4-6 waiver may apply even when the negligence at issue occurred outside the boundaries government owned and operated property. "[T]he duty of a landowner to exercise ordinary care to avoid creating, or permitting an unreasonable risk of harm to others is not determined by . . . the happenstance that the accident and resulting injury occur inside or outside the property boundary." Bober v. N.M. State Fair, 1991-NMSC-031 ¶ 12, 808 P.2d 614, 618-19. The Supreme Court of New Mexico explained, furthermore, that "[w]hile [§] 41-4-6 may appropriately be termed a 'premises liability' statute, the liability envisioned by that section is not limited to claims caused by injuries occurring on or off certain 'premises,' as the words 'machinery' and 'equipment' reveal." Cobos v. Doña Ana Cty. Hous. Auth., 1998-NMSC-049 ¶ 9, 970 P.2d at 1146 (quoting N.M.S.A. § 41-4-6). Also, like common-law premises liability, § 41-4-6 does not require that the negligence be related to a physical aspect of the building, machinery, or equipment. "The waiver applies to more than the operation or maintenance of the physical aspects of the building, and includes safety policies necessary to protect the people who use the building.") Encinias v. Whitener Law Firm, P.A., 2013-NMCA-045 ¶ 10, 299 P.3d 424, 428 (quoting Upton v. Clovis Mun. Sch. Dist., 2006-NMSC-040 ¶ 9, 141 P.3d at 1261). Section 41-4-6 instead "contemplates waiver of immunity where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition on property owned and operated by the government." Bober v. N.M. State Fair, 1991-NMSC-031 ¶ 27, 808

- 42 -

P.2d at 623 (citations and internal quotation marks omitted).

The Supreme Court of New Mexico has also interpreted § 41-4-6's phrase "operation and maintenance" somewhat broadly.  See N.M.S.A. § 41-4-6.  "[Operation and maintenance] is not 'limited [in] its applicability strictly to defects in the physical building.'"  Johnson ex rel. Estate of Cano v. Holmes, 455 F.3d 1133, 1139 (10th Cir. 2006)(quoting Upton v. Clovis Mun. Sch. Dist., 2005-NMCA-085 ¶ 6, 141 P.3d at 1260-61).  New Mexico's courts have, however, found that § 41-4-6's waiver of immunity does not extend to negligent supervision, see Pemberton v. Cordova, 1987-NMCA-020 ¶ 5, 734 P.2d at 256,[13] negligent design, see Rivera v. King, 1988-NMCA-093 ¶¶ 29-34, 765 P.2d 1187, 1194, cert. denied, No. 18,041, 765 P.2d 758 (1988)(unpublished table opinion),[14] negligent inspection, see Martinez v. Kaune, 1987-NMCA-

_____

[13]If presented with the issue, the Court predicts that the Supreme Court of New Mexico would agree with Pemberton v. Cordova, that negligent supervision generally does not waive immunity.  The Supreme Court of New Mexico clarified in Encinias v. Whitener Law Firm, P.A., 2013-NMSC-045 ¶ 14, 310 P.3d 611, 617, that while there is no waiver of immunity for negligent supervision, "prisons cannot turn a blind eye to threats to their inmates' safety."  2013-NMSC-045 ¶ 14, 310 P.3d at 617.  Although the Supreme Court of New Mexico clarified in Encinias v. Whitener Law Firm, P.A. that the Court of Appeals of New Mexico's narrow read of § 41-4-6(A) has since been discredited, it acknowledged that "its central premise, when analyzed under a premises liability theory, is still valid."  Encinias v. Whitener Law Firm, P.A., 2013-NMSC-045 ¶ 13, 310 P.3d at 617.  Negligent supervision alone is not enough to waive immunity under § 41-4-6(A), but allegations that a governmental entity was negligent "in failing to exercise reasonable care to discover and prevent dangerous conditions caused by people on its premises," even where that care is supervisory in nature, might waive immunity under § 41-4-6(A).  See Encinias v. Whitener Law Firm, P.A., 2013-NMSC-045 ¶ 13, 310 P.3d at 617.  In Espinoza v. Town of Taos, 1995-NMSC-070, 905 P.2d 718, the Supreme Court of New Mexico stated: "However, Section 41-4-6 does not grant a waiver for claims of negligent supervision. . . ." Espinoza v. Town of Taos, 1995-NMSC-070 ¶ 8, 905 P.2d at 721 (citing Pemberton v. Cordova, 1987-NMCA-020 ¶ 5, 734 P.2d at 256).

[14]If presented with the issue, the Court predicts that the Supreme Court of New Mexico would agree with Rivera v. King that negligent design does not fit within § 41-4-6's grounds for an immunity waiver, based on Espinoza v. Town of Taos, 1995-NMSC-070 ¶ 8, 905 P.2d at 721 (stating that § 41-4-6 does not grant a waiver for claims of negligent design)(citing Rivera v. King, 1988-NMCA-093 ¶¶ 29-34, 765 P.2d at 1194).

131 ¶¶ 5-10, 745 P.2d 714, 716-17, <u>cert. denied</u>, No. 17,361, 744 P.2d 912 (1987)(unpublished

table opinion),[15] negligent regulation and investigation of violations, <u>see Caillouette v. Hercules,</u>

<u>Inc.</u>, 1992-NMCA-008 ¶ 31, 827 P.2d 1306, 1312;[16] or negligent classification of a prison inmate,

<u>see Archibeque v. Moya</u>, 1993-NMSC-079 ¶¶ 9-12, 866 P.2d at 348.

Although negligent supervision alone is not enough to trigger the § 41-4-6 waiver, "a claim

that involves elements of negligent supervision can still fall under the waiver if that supervision is

directly tied to the operation . . . of the building." <u>Upton v. Clovis Mun. Sch. Dist.</u>, 2006-NMSC-

040 ¶ 16, 141 P.3d at 1263. <u>See Leitheid v. City of Santa Fe</u>, 1997-NMCA-041 ¶¶ 3-4, 940 P.2d

---

[15]If presented with the issue, the Court predicts that the Supreme Court of New Mexico would with <u>Martinez v. Kaune</u> that negligent inspection does not fit within § 41-4-6's grounds for an immunity waiver, based on <u>Espinoza v. Town of Taos</u>, 1995-NMSC-070 ¶ 8, 905 P.2d at 721 (stating that § 41-4-6 does not grant a waiver for claims of negligent inspection)(citing <u>Martinez v. Kaune</u>, 1987-NMCA-131 ¶¶ 5-10, 745 P.2d at 716-17).

[16]If presented with the issue, the Court predicts that the Supreme Court of New Mexico would agree with the Court of Appeals of New Mexico in <u>Caillouette v. Hercules, Inc.</u> that negligent regulation and investigation of violations alone does not fall within the scope of the § 41-4-6 waiver, based on the Supreme Court of New Mexico's decision in <u>Romero v. State</u>, 1991-NMSC-071, 851 P.2d 628, and its denial of certiorari after <u>Caillouette v. Hercules</u>. In <u>Romero v. State</u>, the Supreme Court of New Mexico concluded that the New Mexico State Highway Department's statutory responsibilities constituted supervision of "maintenance" and fell within the § 41-4-6 waiver's scope. 1991-NMSC-071 ¶ 6, 815 P.2d at 630. The Supreme Court of New Mexico stated that "the greater supervisory responsibilities contemplated by the 1986 law included more than issuing regulations. Those responsibilities could have included supervising the county's actual day-to-day maintenance of the roadway." <u>Romero v. State</u>, 1991-NMSC-071 ¶ 9, 815 P.2d at 630. In <u>Romero v. State</u>, the Supreme Court of New Mexico suggested that, if the Highway Department's only responsibility had been to issue regulations, its actions would not have constituted maintenance. <u>See</u> 1991-NMSC-071 ¶ 9, 815 P.2d at 630. Although the Court is reluctant to read too much into the denial of a petition for certiorari, the Supreme Court of New Mexico did deny certiorari in <u>Caillouette v. Hercules</u>, evincing a disinclination to reconsider the Court of Appeals of New Mexico's decision in <u>Caillouette v. Hercules</u>. <u>See Caillouette v. Archibeque</u>, No. 20,355, 826 P.2d 573 (1992)(unpublished table decision).

459, 467;[17] <u>Romero v. State</u>, 1991-NMSC-071 ¶ 9, 815 P.2d 628, 630 (noting that the Highway

Department's maintenance responsibilities included "supervising the county's actual day-to-day

maintenance of the roadway"), <u>receded from on other grounds</u> by <u>Dunleavy v. Miller</u>, 1993-

NMSC-059, 862 P.2d 1212.  In <u>Leitheid v. City of Santa Fe</u>, city pool lifeguards failed to ask for

children's ages and heights, although pool regulations required adult supervision for children

younger than seven and shorter than forty-eight inches.  <u>See Leitheid v. City of Santa Fe</u>, 1997-

NMCA-041 ¶ 2, 940 P.2d at 460-61.  The Court of Appeals of New Mexico found that when the

"lifeguards did not adequately perform duties that were essential to public safety, they negligently

operated the swimming pool and thereby created a condition on the premises that was dangerous

to [the child] and the general public."  <u>Leitheid v. City of Santa Fe</u>, 1997-NMCA-041 ¶ 12, 940

P.2d at 462.  The school's conduct in <u>Upton v. Clovis Municipal School District</u> went beyond

negligent supervision, because: "(i) the school ignored information that the plaintiffs provided

them; (ii) the school failed to warn the substitute teacher about the student's condition; and (iii)

the school failed to follow through with the proper emergency procedures."  <u>C.H. v. Los Lunas</u>

---

[17]If presented with the issue, the Court predicts that the Supreme Court of New Mexico would agree with the reasoning of the Court of Appeals of New Mexico in <u>Leitheid v. City of Santa Fe</u>, in which the Court of Appeals of New Mexico concluded that the City's failure to provide adequate lifeguard supervision constituted negligent operation of a swimming pool, because the City's negligence created a "dangerous condition on the physical premises which affects the swimming public at large."  <u>Leitheid v. City of Santa Fe</u>, 1997-NMCA-041 ¶ 15, 940 P.2d at 463. In <u>Seal v. Carlsbad Independent School District</u>, 1993-NMSC-049 ¶¶ 10-11, 860 P.2d 743, 746, the Supreme Court of New Mexico suggested that, by not providing lifeguards, a school district may have waived immunity because its negligence caused an unsafe, dangerous, or defective condition on property owned and operated by the government.  <u>See</u> 1993-NMSC-049 ¶¶ 10-11, 860 P.2d at 746.  In <u>Espinoza v. Town of Taos</u>, the Supreme Court of New Mexico cited to <u>Seal v. Carlsbad Independent School District</u> as an example of a case under § 41-4-6 concerning negligent conduct that itself created an unsafe condition for the public, permitting a waiver of immunity.  <u>See Espinoza v. Town of Taos</u>, 1995-NMSC-070 ¶ 14, 905 P.2d at 722.

Schools Bd. of Educ., 852 F. Supp. 2d at 1353 (citing Upton v. Clovis Mun. Sch. Dist., 2006-NMSC-040 ¶ 18, 141 P.3d at 126).  In Rave v. Board of Commissioners for the County of Bernalillo, 2017 WL 3600452, at *10, Judge Brack found that § 41-4-6's waiver applied where "the County's employees ignored information [plaintiff] gave them about his medical condition, failed to staff the facility or manage or train its employees to render aid to inmates with medical conditions, and failed to follow through with and/or enforce its policies related to inmates with medical issues."  Rave v. Bd. of Comm'rs for the Cty. of Bernalillo, 2017 WL 3600452, at *10.

In the prison context, the Supreme Court of New Mexico has held that "[t]he 'operation' and 'maintenance' of the penitentiary premises, as these terms are used in [§] 41-4-6, does not include the security, custody, and classification of inmates. . . .  Section 41-4-6 does not waive immunity when public employees negligently perform such administrative functions." Archibeque v. Moya, 1993-NMSC-079 ¶ 8, 866 P.2d at 347 (citations omitted).  In Archibeque v. Moya, Chris Archibeque, an inmate at the Central New Mexico Correction Facility, was transferred to the New Mexico State Penitentiary in Santa Fe, New Mexico.  See 1993-NMSC-079 ¶ 2, 866 P.2d at 346.  Before being released into general population, a prison intake officer, Moya-Martinez, met with Archibeque to discuss whether he had any known enemies within the prison's general population.  See 1993-NMSC-079 ¶ 2, 866 P.2d at 346.  Archibeque informed Moya-Martinez that another inmate, Gallegos, was one of his enemies, and Moya-Martinez, without checking an available list of current inmates, informed Archibeque that Gallegos was no longer at the prison.  See 1993-NMSC-079 ¶ 2, 866 P.2d at 346.  Archibeque was released into general population, and Gallegos assaulted him that night.  See 1993-NMSC-079 ¶ 2, 866 P.2d at 346.  Archibeque sued Moya-Martinez, other corrections officers, and the New Mexico Corrections Department in federal court for violations under 42 U.S.C. § 1983 and the NMTCA.

See 1993-NMSC-079 ¶ 3, 866 P.2d at 346.  The district court interpreted § 41-4-6 narrowly and held that the statute did not waive immunity for negligent security and custody of inmates at the penitentiary.  See 1993-NMSC-079 ¶ 4, 866 P.2d at 346.  Thereafter, Archibeque's § 1983 claims were resolved in favor of Moya-Martinez and the other corrections employees.  See 1993-NMSC-079 ¶ 4, 866 P.2d at 346.  The federal district court denied Archibeque's motion for reconsideration.  See 1993-NMSC-079 ¶ 4, 866 P.2d at 346.  Archibeque appealed, and the Tenth Circuit certified a question to the Supreme Court of New Mexico:

> Does [Section 41-4-6] of the New Mexico Tort Claims Act, [NMTCA Sections 41-4-1 to -29], provide immunity from tort liability to an employee of the state penitentiary whose alleged negligence in releasing a prisoner into the general prison population, which included known enemies of the prisoner, resulted in the prisoner being beaten and injured by one of his enemies?

See Archibeque v. Moya, 1993-NMSC-079 ¶ 1, 866 P.2d at 345-46.  Archibeque argued that Moya-Martinez was participating in the operation of the penitentiary when she classified Archibeque as an inmate who could safely be released into the general prison population, and he argued that Moya-Martinez's alleged negligence in misclassifying him and releasing him into the general population constituted negligent operation of the penitentiary, thereby waiving immunity under § 41-4-6.  See Archibeque v. Moya, 1993-NMSC-079 ¶ 5, 866 P.2d at 346-47.  The Supreme Court of New Mexico found that § 41-4-6 did not waive Moya-Martinez' immunity, stating: "The 'operation' and 'maintenance' of the penitentiary premises, as these terms are used in Section 41-4-6, does not include the security, custody, and classification of inmates."  Archibeque v. Moya, 1993-NMSC-079 ¶ 8, 866 P.2d at 347 (quoting N.M.S.A. § 41-4-6).  The Supreme Court of New Mexico reasoned that Moya-Martinez was not operating and maintaining the prison's physical premises when she negligently classified Archibeque.

Rather, she was performing an administrative function associated with the

operation of the corrections system.  Section 41-4-6 does not waive immunity when public employees negligently perform such administrative functions.  To read Section 41-4-6 as waiving immunity for negligent performance of administrative functions would be contrary to the plain language and intended purpose of the statute.  See State v. Riddall, 112 N.M. 78, 80, 811 P.2d 576, 578 (Ct. App.)(stating that when interpreting a statute, an appellate court is required to consider the plain meaning of the words used and the intended purpose of the statute), cert. denied, 112 N.M. 21, 810 P.2d 1241 (1991).

Archibeque v. Moya, 1993-NMSC-079 ¶ 8, 866 P.2d at 347.  The Supreme Court of New Mexico

further explained:

> While Moya-Martinez's misclassification of Archibeque put him at risk, the negligence did not create an unsafe condition on the prison premises as to the general prison population.  Reading Section 41-4-6 to waive immunity every time a public employee's negligence creates a risk of harm for a single individual would subvert the purpose of the Tort Claims Act, which recognizes that government, acting for the public good, "should not have the duty to do everything that might be done," and limits government liability accordingly.  See Section 41-4-2(A).

Archibeque v. Moya, 1993-NMSC-079 ¶ 11, 866 P.2d at 348.  According to the Supreme Court of

New Mexico, to permit a waiver of immunity under § 41-4-6 whenever injury results from a

negligently performed administrative task "would undermine the purpose of the Tort Claims Act

by subjecting the State to liability for virtually any mistake made during the administration of

corrections facilities that results in injury to an inmate."  Archibeque v. Moya, 1993-NMSC-079

¶ 14, 866 P.2d at 349.  Chief Justice Ransom stated that, whereas a "discrete administrative

decision" does not waive immunity, a "general condition of unreasonable risk from negligent

security practices" could waive immunity.  Lymon v. Aramark Corp., 728 F. Supp. 2d at 1266

(quoting Archibeque v. Moya, 1993-NMSC-079 ¶ 16, 866 P.2d at 349 (Ransom, C.J., concurring)).

The Court has concluded that Chief Justice Ransom determined that § 41-4-6 applies when

alleged negligence changes the condition of the premises in question, and when the plaintiff's

injuries arise from the premises' condition.  See Lymon v. Aramark Corp., 728 F. Supp. 2d at 1266.

In the context of inmate misclassification claims, the Court has concluded that a conclusory allegation that one inmate's misclassification created a danger for the inmate population could not support finding a waiver under § 41-4-6, and found that, to come within Chief Justice Ransom's footnote, inmate misclassification -- allegedly performed negligently -- must raise security risks, not health risks.  See Lymon v. Aramark Corp., 728 F. Supp. 2d at 1266.  "The Court is reluctant to expand Chief Justice Ransom's possible exception to other areas beyond prison security."  Lymon v. Aramark Corp., 728 F. Supp. 2d at 1266-67.

New Mexico caselaw after Archibeque v. Moya suggests that, for negligent supervision, operation, or security practices to constitute negligent operation and maintenance, the negligent condition created must threaten the safety of the public or of a class of users -- not merely one individual.  In Archibeque v. Moya, the Supreme Court of New Mexico noted that, "[w]hile a segment of the population at risk might justify waiver of immunity under Section 41-4-6, a situation in which a single inmate is put at risk is not comparable."  1993-NMSC-079 ¶ 14 n.3, 866 P.2d at 349 n.3.  Chief Justice Ransom's concurring opinion noted:

> I concur because there was no showing that the general prison population reflected anything but the reasonable and expected risks of prison life.  The classification of Archibeque did not change the condition of the premises.  I see Archibeque's injuries as having been proximately caused by a discrete administrative decision.  As an alternative to releasing Archibeque into the general population, he could have been placed in administrative segregation, a form of protective custody.  The risk arose not from a condition of the premises (as with the wild dogs in Castillo or, arguably, the inadequate health care facilities in Silva [v. State, 1987-NMSC-107, 745 P.2d 380]); it arose from the classification itself.

Archibeque v. Moya, 1993-NMSC-079 ¶ 17, 866 P.2d at 350 (Ransom, C.J., concurring).  After Archibeque v. Moya, the Supreme Court of New Mexico clarified that, for § 41-4-6's waiver to apply, the question is not whether the alleged negligence created an actual risk of harm for only a

single individual, but rather whether the alleged negligence created a condition that poses a potential risk to the general public or to a class of people using the premises in question.  See Upton v. Clovis Mun. Sch. Dist., 2006-NMSC-040 ¶ 8, 141 P.3d at 1261.

In Leitheid v. City of Santa Fe, the Court of Appeals of New Mexico determined that the plaintiffs' claim was not merely negligent supervision, but rather negligent operation, creating a dangerous condition with a potential risk for more than just a single individual.  See Leitheid v. City of Santa Fe, 1997-NMCA-041 ¶ 5, 940 P.2d at 467.  In Upton v. Clovis Municipal School District, the Supreme Court of New Mexico held that, "[i]f the only alleged misconduct toward Sarah had been the substitute P.E. teacher failing to watch her while she participated in physical exercise, the Upton's claim . . . would be practically identical to the single claim of negligent supervision we found inadequate in Espinoza."  Upton v. Clovis Mun. Sch. Dist., 2006-NMSC-040-¶ 21, 141 P.3d at 1264.  In Espinoza v. Town of Taos, the Supreme Court of New Mexico concluded that, for § 41-4-6's waiver to apply, "the critical question is whether the condition creates a potential risk to the general public."  1995-NMSC-070 ¶ 9, 905 P.2d at 683.  Section 41-4-6's waiver may also apply if the negligent operation or maintenance creates a dangerous condition that threaten "a class of users of the building."  Upton v. Clovis Mun. Sch. Dist., 2006-NMSC-040 ¶ 8, 141 P.3d at 1261.  See Rave v. Bd. of Comm'rs for Cty. of Bernalillo, 2017 WL 3600452, at *10 (defining the class of building users as "incarcerated inmates with medical issues"); Castillo v. Cty. of Santa Fe, 1988-NMSC-037 ¶ 9, 755 P.2d at 51 (holding that, "[g]iven the potential for the safety of Valle Vista residents and invitees to be compromised by this situation, we find that, under the right circumstances, loose-running dogs could represent an unsafe condition upon the land").

New Mexico's courts also have required that, for § 41-4-6's waiver to apply, the public

employees knew or should have known of the danger posed by the condition.  In Callaway v. New Mexico Department of Corrections, 1994-NMCA-049 ¶ 19, 875 P.2d at 399,[18] the Court of Appeals of New Mexico held that the New Mexico Corrections Department "knew or should have known that roaming gang members with a known propensity for violence had access to potential weapons in the recreation area, that such gang members created a dangerous condition on the premises of the penitentiary, and that the danger to other inmates was foreseeable."  1994-NMCA-049 ¶ 19, 875 P.2d at 399.  The Court of Appeals of New Mexico additionally noted, in "support for [its] holding[,]" that the "inmate assailant was unusually dangerous and the prison authorities had knowledge of the danger posed by the inmate." 1994-NMCA-049, ¶ 19, 875 P.2d at 399 (alterations added).  See Lymon v. Aramark Corp., 728 F. Supp. 2d at 1251-56; C.H. v. Los Lunas Sch. Bd. of Educ., 852 F. Supp. 2d at 1358-59 (holding that allegations of negligence against the defendants fell within the § 41-4-6 waiver, in part, because the plaintiff "adequately allege[d] that the defendants knew or should have known of the dangerous condition").

The Court has also addressed waiver of NMTCA immunity under § 41-4-6 in several other opinions.  In Stark-Romero v. National Railroad Passenger Co. (AMTRAK), 805 F. Supp. 2d 1145

---

[18]The Court predicts that the Supreme Court of New Mexico would agree with the Court of Appeals of New Mexico in Callaway v. New Mexico Department of Corrections that § 41-4-6's waiver applies where a prison knew certain inmates were dangerous and failed to supervise them, based on the Supreme Court of New Mexico's favorable citations to Callaway v. N.M. Dep't of Corrections.  See Encinias v. Whitener Law Firm, P.A., 2013-NMSC-045 ¶ 10, 310 P.3d at 616 ("A prison creates a dangerous condition by allowing known gang members to congregate in a recreation room that is shielded from observation by guards.  Callaway, 1994-NMCA-049, ¶¶ 4, 19, 117 N.M. 637, 875 P.2d 393."); Upton v. Clovis Mun. Sch. Dist., 2006-NMSC-040 ¶ 23, 141 P.3d at 1264 (citing Callaway v. New Mexico Department of Corrections for the assertion that, for § 41-4-6's purposes, a condition must be at least potentially dangerous to the particular class of people using a building or facility in question, rather than actually dangerous to the entire public); Espinoza v. Town of Taos, 1995-NMSC-070 ¶ 13, 905 P.2d at 722 (discussing Callaway v. N.M. Dep't of Corrections and quoting the Court of Appeals of New Mexico's findings).

(D.N.M. 2011)(Browning, J.), the Court held that immunity was not waived under § 41-4-6 for the plaintiffs' ingress and egress from a waste transfer facility, because, although New Mexico is liberal in protecting people traveling on public land, such a duty would be without limits.  See 805 F. Supp. 2d at 1177.  The Court found that the plaintiffs' injuries, in that case, did not arise from an unsafe, dangerous, or defective condition of the defendant's property.  See Stark-Romero v. Nat'l R.R. Passenger Co. (AMTRAK), 805 F. Supp. 2d at 1182.  In Trujillo v. Salazar, No. CIV 04-0689 JB/WDS, 2006 WL 1228827 (D.N.M. March 1, 2006)(Browning, J.), the Court concluded § 41-4-6 did not waive Eleventh Amendment immunity, because "the gravamen of the negligent operation claim against Salazar was not that Salazar himself ha[d] committed negligence by showing up to work every day, but that [the Central New Mexico Correctional Facility ("CNMCF")] negligently operated the facility by allowing Salazar to continue working at the facility."  2006 WL 1228827, at *9 (emphasis omitted).  The Court further held that, "[t]o the extent that Trujillo may be arguing that Salazar negligently operated CNMCF by carrying on his employment at CNMCF after the first two alleged incidents, his decision to persist in his job was not a condition on the premises."  Trujillo v. Salazar, 2006 WL 1228827, at *9.  In Williams v. Board of Regents of University of New Mexico, 20 F. Supp. 3d 1177, 1195 (D.N.M. 2014)(Browning, J.), the Court concluded that a claim under § 41-4-6 on the basis of negligent misclassification of an inmate likely would fail if the alleged negligence only exposed a plaintiff to health risks rather than to security risks.  The Court cited Lymon v. Aramark Corp., 728 F. Supp. 2d at 1266, in which the Court stated that, to fall within Chief Justice Ransom's concurrence in Archibeque v. Moya, a misclassification "must raise security risks, not health risks."  Lymon v. Aramark Corp., 728 F. Supp. 2d at 1266.

More recently, in Tanner v. McMurray, No CIV 18-0876, 2018 WL 6050675 (D.N.M.

Nov. 18, 2018)(Browning, J.), the Court held that § 41-4-6 did not waive state prison officials' immunity when they failed to render adequate obstetric care to a pretrial detainee who went into labor in custody.  See 2018 WL 6050675, at *45-46.  The plaintiff in that case alleged as negligence a nurse's delay in rendering medical treatment, and the plaintiff argued that "negligence affecting a single defendant can be used to extrapolate an effect on an entire group of defendants."  Tanner v. McMurray, 2018 WL 6050675, at *45.  The Court concluded that this argument would place no limits on § 41-4-6's waiver, and the Court noted that, "[e]ven in its broadest interpretation of § 41-4-6's applicability, the Supreme Court of New Mexico maintains that the waiver's application requires more than a single instance of misconduct."  2018 WL 6050675, at *46 (citing Upton v. Clovis Mun. Sch. Dist., 2006-NMSC-040 ¶ 21, 141 P.3d at 1264).  The Court concluded that a prison official's delay in rendering aid to a single inmate does not amount to a policy or practice that threatened a class of inmates, as § 41-4-6's waiver requires.  See 2018 WL 6050675, at *46. The Court's caselaw thus reflects, as does New Mexico courts' caselaw, Chief Justice Ransom's concurring opinion in Archibeque v. Moya that the defining feature of § 41-4-6's waiver is its application only to negligence that endangers a class of a building's users.

## ANALYSIS

The Court concludes that it shall dismiss Tafoya's claims under rule 12(b)(6), because the State Defendants are immune from suit under the Eleventh Amendment and no waiver of that immunity exits.  The Court also concludes that it would be futile to amend the Complaint, because no new facts will change the Court's Eleventh Amendment immunity analysis.  The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const., amend.

XI.  The Eleventh Amendment acts as a "jurisdictional bar that precludes unconsented suits in a federal court against a state . . . ."  Peterson v. Martinez, 707 F.3d 1197, 1205 (10th Cir. 2013). State agencies, such as CYFD, are an "arm of the state" and, likewise, are immune from suit under the Eleventh Amendment.  Healthy City Bd. of Ed. v. Doyle, 429 U.S. at 280-81.  Nonetheless, the Eleventh Amendment is subject to three exceptions: (i) Congressional abrogation; (ii) waiver by state consent to suit; and (iii) suits against individual state officials for prospective injunctive relief to remedy an ongoing violation of federal law.  See Muscogee (Creek) Nation v. Pruitt, 669 F.3d 1159, 1166 (10th Cir. 2012).  Tafoya argues that: (i) she can sue the State Defendants under § 1983; (ii) that the NMTCA waives the Eleventh Amendment immunity; and (iii) the Court should allow her to amend the First Amended Complaint.  See Response at 3-8 (citing N.M.S.A. § 41-4-5).  The Court concludes that (i) Tafoya cannot sue the State Defendants under § 1983; (ii) the State Defendants have sovereign immunity and that there is no waiver of Eleventh Amendment immunity under the NMTCA; and (iii) it would be futile to amend the First Amended Complaint.

## I.    SECTION 1983 CREATES NO REMEDY AGAINST THE STATE DEFENDANTS.

Tafoya lacks a cause of action to bring a claim under § 1983 against the State Defendants, because (i) New Mexico has immunity under the Eleventh Amendment; and (ii) CYFD is both an "arm of the state," Healthy City Bd. of Ed. v. Doyle, 429 U.S. at 280-81, and CYFD is not a "person" for purposes of § 1983, McLaughlin v. Bd. of Trustees of State Colleges of Colorado, 215 F.3d 1168, 1172 (10th Cir. 2000).  "[Section] 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."  Will v. Michigan Dep't of State Police, 491 U.S. 58, 66 (1989).  Justice White concluded that "Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity."  Will v. Michigan Dep't of

State Police, 491 U.S. at 66.  Justice Ginsburg subsequently clarified that "§ 1983 actions do not

lie against a State."  Arizonans for Official English v. Arizona, 520 U.S. 43, 69 (1997)(citing Will

v. Michigan Dep't of State Police, 491 U.S. at 71).  The Supreme Court has explained that even

absent Eleventh Amendment immunity, "which the State could waive," plaintiffs may not sue a

state under § 1983 because "§ 1983 creates no remedy against a State."  Arizonans for Official

English v. Arizona, 520 U.S. at 70.  Here, New Mexico has asserted its sovereign immunity, see

MTD at 1-2, 4-5, and Tafoya does not argue that New Mexico has waived its sovereign immunity,

see Response at 1-8.   See also Tennessee v. Lane, 541 U.S. 509, 517 (2004)("The Eleventh

Amendment renders the States immune from . . . to unconsented suits brought by a State's own

citizens."); Jackson v. New Mexico Pub. Def.'s Office, 361 F. App'x 958, 963 (10th Cir. 2010).

Further, even if New Mexico had waived its sovereign immunity, Tafoya would lack a remedy

against New Mexico under § 1983.  See Arizonans for Official English v. Arizona, 520 U.S. at 70;

Jackson v. New Mexico Pub. Def.'s Office, 361 F. App'x at 963 ("§ 1983 applies only to 'persons'

and, when sued solely for money damages . . . 'neither a State nor its officials acting in their official

capacities are 'persons' under § 1983.'")(quoting Will v. Michigan Dept. of State Police, 491 U.S.

58, 71 (1989)).

State agencies, such as CYFD, are an "arm of the state" and likewise are immune from suit

under the Eleventh Amendment.  Healthy City Bd. of Ed. v. Doyle, 429 U.S. at 280-81.  CYFD is

also not a "person" for purposes of liability under § 1983.  McLaughlin v. Bd. of Trs. of State

Colls. of Colo., 215 F.3d 1168, 1172 (10th Cir. 2000)("[A] governmental entity that is an arm of

the state for Eleventh Amendment purposes is not a 'person' for § 1983 purposes.").  Tafoya,

therefore, lacks a cause of action to bring a claim under § 1983 against CYFD.  See Arguello v.

Arguello, No. 12 CV 432 JAP/LAM, 2012 WL 13080095, at *3 & n.4 (D.N.M. July 13,

2012)(Browning, J.)(concluding that because neither the State nor CYFD are a person for purposes of § 1983, "all of Plaintiffs' claims under 42 U.S.C. § 1983 against the State [and CYFD as an arm of the state] must be dismissed for lack of subject matter jurisdiction").

## II.   THE STATE DEFENDANTS ARE IMMUNE FROM TAFOYA'S CLAIMS, BECAUSE NEW MEXICO IS IMMUNE UNDER THE ELEVENTH AMENDMENT; CYFD IS AN ARM OF THE STATE; AND THE NMTCA HAS <u>NOT WAIVED THAT IMMUNITY</u>.

Unless there is a waiver of immunity, the Court will dismiss Tafoya's claims, because the State Defendants have Eleventh Amendment immunity. See Muscogee (Creek) Nation v. Pruitt, 669 F.3d at 1166. See, e.g., Ysais v. Richardson, No. CIV. 07-0287 JB/RLP, 2008 WL 4861697, at *5 (D.N.M. July 9, 2008)(Browning, J.)(concluding that, because CYFD is an "arm[] of the State of New Mexico[,] and [the plaintiff] has pointed to no waiver of Eleventh-Amendment immunity, [CYFD] cannot be sued in federal court and all claims against them must be dismissed"). Tafoya argues that the State Defendants' Eleventh Amendment immunity has been "waived by sections 41-4-5 through 41-4-12 N.M.S.A. 1978." Response at 6. Tafoya argues that CYFD is liable under N.M.S.A. § 41-4-5, because it waives immunity for the "'wrongful death . . . caused by the negligence of a public employee while acting within the scope of their duties in the operation . . . of any motor vehicle.'" Response at 6 (quoting N.M.S.A. § 41-4-5). Tafoya argues that Taylor Tots Daycare was not permitted to use vehicles to transport children, "[y]et, [CYFD] failed to take reasonable actions in preventing Defendant Taylor Tots from operating a motor vehicle. . . . As a result, Defendant[']s negligence caused the wrongful death of Decedent." Response at 7. The Court concludes that N.M.S.A. § 41-4-5 does not waive CYFD's immunity here, because the Taylors are not public employees under N.M.S.A. § 41-4-3(F). The Court also concludes that, to the extent Tafoya argues that CYFD is liable under theories of negligent

supervisor and punitive damages, see First Amended Complaint ¶¶ 25-47, at 6-11, there is no waiver of immunity under the NMTCA.

CYFD, as a state agency, is an "arm of the state," and is immune from suit under the Eleventh Amendment, unless that immunity is waived. Healthy City Bd. of Ed. v. Doyle, 429 U.S. at 280-81. Under the NMTCA, New Mexico has made it its "public policy . . . that governmental entities and public employees shall only be liable within the limitations of the Tort Claims Act and in accordance with the principles established in that act." N.M.S.A. § 41-4-2(A). "A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act[19] and by Sections 41-4-5 through 41-4-12 N.M.S.A. 1978." N.M.S.A. § 41-4-4 (A) (footnote in the original). See Begay v. State, 1985-NMCA-117 ¶ 10, 723 P.2d at 256 ("Consent to be sued may not be implied, but must come within one of the exceptions to immunity under the Tort Claims Act."). If the Court finds no specific immunity waiver in the NMTCA, the Court must dismiss Tafoya's Complaint against the CYFD. See Begay v. State, 1985-NMCA-117 ¶ 8, 723 P.2d at 255. "The areas for which immunity is waived in the [New Mexico] Tort Claims Act are quite specific." Luboyeski v. Hill, 1994-NMSC-032, ¶ 8, 383, 872 P.2d 353, 356. Sections 41-4-5 through 41-4-12 waive liability for the following categories: (i) operation or maintenance of motor vehicles, aircraft and watercraft; (ii) buildings, public parks, machinery, equipment and furnishings; (iii) airports; (iv) public utilities; (v) medical facilities; (vi) health care providers; (vii) highways and streets; and (viii) law enforcement officers. See N.M.S.A. §§ 41-4-5 to -12. The NMTCA contains an exclusive remedy provision:

> The [NMTCA] shall be the exclusive remedy against a governmental entity

---

[19]See N.M.S.A. § 28-22-1.

or public employee for any tort for which immunity has been waived under the [NMTCA] and no other claim, civil action or proceeding for damages, by reason of the same occurrence, may be brought against a governmental entity or against the public employee or his estate whose act or omission gave rise to the suit or claim. . . . .

N.M.S.A. § 41-4-17(A).  See also Luboyeski v. Hill, 1994-NMSC-032, ¶ 8, 383, 872 P.2d 353, 356 ("The exclusive-remedy provision [N.M.S.A. § 41-4-17] arguably suggests that Sections 41-4-5 through 41-4-12 provide a complete list of exceptions to an otherwise blanket sovereign immunity.").

Tafoya alleges that

CYFD was negligent for the following reasons:

- CYFD failed to monitor and administer all laws, policies, and procedures of all functions formerly administered and exercised by the youth authority, as well as administer certain functions related to children, youth and families that were formerly administered by other departments or agencies of the state.

- CYFD failed to inform parents about the fact that Defendant's were not allowed to transport any of the children in vehicles.

- CYFD owed a duty to keep parents informed of lack of permission slips in their file regarding the children's off-site field trips.

- CYFD owed a duty to inform parents of the lack of appropriate number of car seats per children under six years of age ratio.

- CYFD failed to monitor and follow up on whether proper protocol was being followed after previous complaints were made.

- CYFD failed to monitor and follow up on transportation violations after knowing that Tots Daycare and Defendants were prohibited from driving their vehicles due to not having passed the inspection.

First Amended Complaint ¶ 29, at 7.  None of these negligence or loss of consortium claims are actionable unless Tafoya can point to a specific waiver of liability under the NMTCA.  See Begay v. State, 1985-NMCA-117 ¶ 8, 723 P.2d at 255.  Cf. Thompson v. City of Albuquerque, 2017-

NMSC-021, ¶ 10, 397 P.3d 1279, 1282 (concluding that "immunity may be waived for loss of consortium damages" only for "a claim deriving from an enumerated tort under the [NM]TCA")(citing Brenneman v. Bd. of Regents of Univ. of New Mexico, 2004-NMCA-003, ¶ 19, 84 P.3d 685, 689 (concluding that "loss of consortium is exactly the type of damage 'based upon the traditional tort concepts of duty' that the Legislature intended to include under the applicable waivers of sovereign immunity in the [NMTCA]")(quoting N.M.S.A. § 41-4-2(A)). The only waiver provision under the NMTCA that Tafoya cites deals with motor vehicle operation:

> The immunity granted pursuant to Subsection A of Section 41-4-4 N.M.S.A. 1978 does not apply to liability for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any motor vehicle, aircraft or watercraft.

N.M.S.A. § 41-4-5. See Response at 6-8. Tafoya argues that N.M.S.A. § 41-4-5 "is undoubtedly applicable to this case," because (i) CYFD "failed to take reasonable actions in preventing Defendant Taylor Tots from operating a motor vehicle"; and (ii) "CYFD allowed Defendant Taylor Tots Daycare to operate a motor vehicle even though they were not allowed to."  Response at 6-7. For the motor vehicle exception to apply, however, the Taylors must be "public employees . . . acting within the scope of their duties . . . ," N.M.S.A. § 41-4-5, but Tafoya does not explain how the Taylors fit within the definition of a public employee, or whether they are acting within the scope of their duties. See Response at 1-8. For purposes of the NMTCA, a public employee

> means an officer, employee or servant of a governmental entity, excluding independent contractors except for individuals defined in Paragraphs (7), (8), (10), (14) and (17) of this subsection, or of a corporation organized pursuant to the Educational Assistance Act, the Small Business Investment Act or the Mortgage Finance Authority Act or a licensed health care provider, who has no medical liability insurance, providing voluntary services as defined in Paragraph (16) of this subsection and including:
>
> (1)      elected or appointed officials;

(2)      law enforcement officers;

(3)      persons acting on behalf or in service of a governmental entity in any official capacity, whether with or without compensation;

(4)      licensed foster parents providing care for children in the custody of the human services department, corrections department or department of health, but not including foster parents certified by a licensed child placement agency;

(5)      members of state or local selection panels established pursuant to the Adult Community Corrections Act;

(6)      members of state or local selection panels established pursuant to the Juvenile Community Corrections Act;

(7)      licensed medical, psychological or dental arts practitioners providing services to the corrections department pursuant to contract;

(8)      members of the board of directors of the New Mexico medical insurance pool;

(9)      individuals who are members of medical review boards, committees or panels established by the educational retirement board or the retirement board of the public employees retirement association;

(10)     licensed medical, psychological or dental arts practitioners providing services to the children, youth and families department pursuant to contract;

(11)     members of the board of directors of the New Mexico educational assistance foundation;

(12)     members of the board of directors of the New Mexico student loan guarantee corporation;

(13)     members of the New Mexico mortgage finance authority;

(14)     volunteers, employees and board members of court-appointed special advocate programs;

(15)     members of the board of directors of the small business investment corporation;

(16)     health care providers licensed in New Mexico who render voluntary health

care services without compensation in accordance with rules promulgated by the secretary of health. The rules shall include requirements for the types of locations at which the services are rendered, the allowed scope of practice and measures to ensure quality of care;

(17)    an individual while participating in the state's adaptive driving program and only while using a special-use state vehicle for evaluation and training purposes in that program;

(18)    the staff and members of the board of directors of the New Mexico health insurance exchange established pursuant to the New Mexico Health Insurance Exchange Act; and

(19)    members of the insurance nominating committee . . . .

N.M.S.A. § 41-4-3(F).  The New Mexico Legislature defines "scope of duty" to mean "performing any duties that a public employee is requested, required or authorized to perform by the governmental entity, regardless of the time and place of performance."  N.M.S.A. § 41-4-3(G).  "[N]ot all duties of public employees are enumerated in a statute or regulation."  Rayos v. State ex rel. New Mexico Dep't of Corr., Adult Prob. & Parole Div., 2014-NMCA-103, ¶ 8, 336 P.3d 428, 431 (noting that courts "have also considered such sources as departmental job descriptions and affidavits in determining the duties of public employees"), cert. quashed, 2015-NMCERT-007, 368 P.3d 2.[20]

The Taylors, Taylor Tots Daycare's owners and operators, see First Amended Complaint ¶ 6, 34, at 3, 9, do not meet the definition of a public employee in N.M.S.A. § 41-4-3(F), because

---

[20]The Court predicts that the Supreme Court of New Mexico, if presented with the issue, would agree with the result in Rayos v. State ex rel. New Mexico Dep't of Corr., Adult Prob. & Parole Div., because it is consistent with Supreme Court of New Mexico case law.  See Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't, 1996-NMSC-021, ¶¶ 9-10, 916 P.2d 1313 (considering statutes enumerating municipal police officers, county sheriffs, and law enforcement officers duties); Anchondo v. Corr. Dep't, 1983-NMSC-051, ¶¶ 4-8, 666 P.2d 1255 (looking to the secretary of corrections' and the county detention center warden's principal duties the statue describes to conclude they are not law enforcement officers under the NMTCA).

Tafoya does not allege that either of the Taylors are an "officer, employee or servant" of CYFD or any other governmental entity.  N.M.S.A. § 41-4-3(F).  At the October 6, 2020, hearing, Tafoya admitted that "that Mary and Sandi Taylor are private individuals."  Oct. 6 Tr. at 17:21-22 (Pradia).  Tafoya does not cite any provision of the Children, Youth and Families Department Act, N.M.S.A. §§ 9-2A-1 to -24, or of any other statute suggesting that daycare owners and operators, such as the Taylors, meet the "independent contractor[]" exception "defined in Paragraphs (7), (8), (10), (14) and (17) of" N.M.S.A. § 41-4-3(F), nor does Tafoya allege that the Taylors meet any of the other examples in N.M.S.A. §§ 41-4-3(F)(1)-(19), see Response at 1-8, nor can the Court find any law suggesting that daycare owners or operators fall within the public employee definition.  Because the Taylors are not public employees under N.M.S.A. § 41-4-3(F), the Court concludes that N.M.S.A. § 41-4-5 does not waive CYFD's sovereign immunity as an "arm of the state."  Healthy City Bd. of Ed. v. Doyle, 429 U.S. at 280-81.

Insofar as Tafoya alleges that CYFD negligently supervised the Taylors resulting in the death of M.J., see First Amended Complaint ¶ 29, at 7; Response at 6-7 (alleging that CYFD "failed to take reasonable actions in preventing Defendant Taylor Tots from operating a motor vehicle" and "CYFD allowed Defendant Taylor Tots Daycare to operate a motor vehicle even though they were not allowed to"), Tafoya cites no applicable NMTCA provision that waives immunity.  To the extent that New Mexico courts have discussed whether negligent supervision is actionable under the NMTCA, that discussion has focused on whether there is a waiver of immunity "for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings."  N.M.S.A. § 41-4-6.  The Supreme Court of New Mexico, however, has concluded that "Section 41-4-6 does not

grant a waiver for claims of negligent supervision, . . . negligent design, . . . [or] negligent inspection . . . ." Espinoza v. Town of Taos, 1995-NMSC-070, ¶ 8, 905 P.2d 718, 721 (citations omitted).  See Upton v. Clovis Mun. Sch. Dist., 2006-NMSC-040, ¶ 16, 141 P.3d 1259 ("[A] complaint alleging nothing more than negligent supervision is not actionable, because the [NM]TCA does not specify a tort waiver for negligent supervision.").  Because there is no waiver of immunity for negligent supervision under the NMTCA, the Court will also dismiss the claim.

Last, Tafoya asks the Court to award punitive damages, see First Amended Complaint ¶¶ 32, 47, at 9, 11, but does not cite any waiver of Eleventh Amendment immunity under the NMTCA, see Response at 1-8.  The NMTCA generally precludes awards of punitive damages. See Brooks v. Bd. of Educ., 2016 WL 8188562, at *17 (concluding that "punitive damages are unavailable in this case because [New Mexico] state law bars punitive damages awards against state entities"); Torrance Cty. Mental Health Program v. N.M. Health & Env't Dep't, 1992-NMSC-026, ¶ 16, 830 P.2d at 149.  As the Supreme Court of New Mexico has held, the NMTCA contains an "express grant of immunity to the state from liability for punitive damages in an action for which immunity has been waived."  Torrance Cty. Mental Health Program v. N.M. Health & Env't Dep't, 1992-NMSC-026, ¶ 16, 830 P.2d 145, 149.  Specifically, N.M.S.A. § 41-4-19(D) states: "No judgment against a governmental entity or public employee for any tort for which immunity has been waived under the Tort Claims Act shall include an award for exemplary or punitive damages or for interest prior to judgment."  N.M.S.A. § 41-4-19(D).  Because Tafoya cites to no waiver of Eleventh Amendment immunity, and the NMTCA bars punitive damages against state entities, the Court will dismiss this claim.

III.    **IT IS FUTILE TO AMEND THE FIRST AMENDED COMPLAINT, BECAUSE THE COURT'S ELEVENTH AMENDMENT ANALYSIS WOULD NOT CHANGE.**

Tafoya argues that "[i]n the interest of justice additional information is necessary" and asks to Court to therefore deny the MTD.  Response at 3-4.  At the October 6, 2020, hearing on the MTD, Tafoya stated that she had filed for leave to file the second amended complaint, because she had obtained "an expert that gave us some additional facts that we wanted to incorporate in our second amended complaint."  Oct. 6 Tr. at 4:18-19 (Pradia).  After the hearing, however, Tafoya filed a notice withdrawing the second amended complaint.  See Notice of Withdrawal of Plaintiff's Second Amended Complaint, filed October 6, 2020 (Doc. 47).[21]  And, then, at the November 6, 2020, hearing, Tafoya stated that "the amended complaint is moot at this point," because the parties had decided "to close this matter out so there is no need to [have an] amended complaint hearing." Nov. 6 Tr. at 5:11-20 (Pradia).

To the extent that Tafoya, in the Response, argues that leave to file a second amended complaint is necessary to disclose additional facts, the Court concludes an amended complaint would be futile.  When a party may no longer amend a pleading as a matter of course under rule 15(a)(1), the party must obtain the opposing parties' consent or the court's leave -- which should be "freely give[n] . . . when justice so requires" -- to amend his or her pleading.  Fed. R. Civ. P. 15(a)(2).  A court, however, should deny leave to amend under rule 15(a), where the proposed

---

[21]At the October 6, 2020, hearing, the Court stated that the Second Amended Complaint had been filed in error, because leave to file an amended complaint had not been granted.  See Oct. 6 Tr. at 8:17-23 (Court) ("[Tafoya] needs to withdraw the [second amended] complaint itself . . . and . . . then we need to set a hearing on [the] second amended complaint.").  Tafoya complied with the Court's order to withdraw his second amended complaint.  See Notice of Withdrawal of Plaintiff's Second Amended Complaint, filed October 6, 2020 (Doc. 47).

"amendment would be futile."  Jefferson Cty. Sch. Dist. v. Moody's Investor's Serv., 175 F.3d at

859.  See In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.  An amendment is "futile"

if the pleading, "as amended, would be subject to dismissal."  In re Thornburg Mortg., Inc. Sec.

Litig., 265 F.R.D. at 579-80 (citing TV Commc'ns Network, Inc. v. Turner Network Television,

Inc., 964 F.2d at 1028).

        Here an amendment to the First Amended Complaint would be futile, because any new

factual allegations made by an expert would not change the Court's Eleventh Amendment

immunity analysis and the First Amended Complaint "as amended, would" still "be subject to

dismissal."  In re Thornburg Mortg., Inc. Sec. Litig., 265 F.R.D. at 579-80.  Because the Court's

analysis is premised on the Eleventh Amendment grant of immunity to the State Defendants, an

amended complaint would be proper only if it provides some basis for waiver of Eleventh

Amendment immunity. See Muscogee (Creek) Nation v. Pruitt, 669 F.3d at 1166; Begay v. State,

1985-NMCA-117 ¶ 10, 723 P.2d at 256 ("Consent to be sued may not be implied, but must come

within one of the exceptions to immunity under the Tort Claims Act.").   Tafoya does not explain

what facts the expert would provide, see Oct. 6. Tr. 4:18-7:18 (Pradia), nor does Tafoya argue that

any new facts would change the Court's Eleventh Amendment immunity analysis.  Accordingly,

the Court concludes that an amendment to the First Amended Complaint would be futile.

        **IT IS ORDERED** that: (i) the State of New Mexico, Children Youth & Families

Department's Motion to Dismiss Plaintiff's First Amended Complaint, filed July 17, 2020 (Doc.

21), is granted; (ii) Plaintiff Erika Tafoya's claims against Defendants State of New Mexico and

Children Youth & Families Department are dismissed; and (iii) Tafoya's request to amend the

Complaint in Plaintiff's Response to Defendant State of New Mexico, Children Youth & Families

Department's Motion to Dismiss Plaintiff's First Amended Complaint, filed August 24, 2020

(Doc. 29), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Troy J. Pradia
The Cox Pradia Law Firm, P.L.L.C
Houston, Texas

--and--

John Paul Valdez
Davie & Valdez, P.C.
El Paso, Texas

     *Attorneys for the Plaintiff*

Stephen Shanor
Chelsea Rae Green
Hinkle, Hensley, Shanor & Martin, L.L.P.
Roswell, New Mexico

     *Attorneys for the Defendants State of New Mexico and Children, Youth and Families Department*

Ronald J. Childress
Urvashi Parkhani
Childress Law Firm
Albuquerque, New Mexico

     *Attorneys for the Defendants Taylor Tots Daycare, Sandi Taylor, and Mary Taylor*